LARRY D. VAUGHT, Judge
Patricia Barton appeals the December 31, 2018, order entered by the Poinsett County Circuit Court terminating her parental rights to her three children, JB (born June 5, 2008), ZS (born April 8, 2013), and BS (born April 12, 2017). On appeal, Barton contends that the circuit court clearly erred in finding that statutory grounds supported termination and that termination was in the children's best interest. She also contends that the court abused its discretion in admitting her psychological evaluation into evidence. We affirm.
On December 10, 2015, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect alleging that JB and ZS were dependent-neglected due to environmental neglect. A DHS caseworker attached an affidavit to the petition stating that Barton's home had no heat, and it was fifty-three degrees inside the home; there were holes in the floor; there was no hot water and no refrigerator; broken windows were covered with plastic and boards; there were exposed wires in the electrical outlets; the ceiling was broken and was falling through in some places; there was no working tub; and the toilet had been broken into pieces. The caseworker further stated that DHS had a history with the Barton family dating back to November 2008 that included protective-services cases in 2013 and 2014. The circuit court entered an ex parte order for emergency custody of JB and ZS on December 14, 2015, and a probable-cause order was entered on December 16.
*62 The court adjudicated JB and ZS dependent-neglected on the basis of environmental neglect, and the goal of the case was reunification. Following a review hearing, an order was entered on April 12, 2016, wherein the court found that Barton had complied with the case plan, and the court authorized a trial placement. On June 13, the court entered an order returning JB and ZS to Barton's custody, closed the dependency-neglect case, and opened a protective-services case.
However, on August 22, DHS filed a second petition for emergency custody of JB and ZS, in which it alleged environmental neglect. The caseworker's affidavit accompanying this petition stated that Barton had no electricity in her home and had been evicted for failure to pay rent. Barton reported that she planned to move in with her neighbor, whom she planned to marry, but he had locked her and the children out of his apartment. She had no alternative housing plan. The court entered an ex parte order for emergency custody the same day. Later, a probable-cause order was entered, and on October 5, the court entered an adjudication order finding JB and ZS dependent-neglected due to environmental neglect.
A January 11, 2017 review-hearing order stated that Barton complied with parts of the case plan but not others. She failed to visit the children on a regular basis and to maintain appropriate housing. The order stated that she reported she had been living with her neighbor, but because he abused her, she had been staying in a shelter for abused women. Another review-hearing order was entered on April 10. This order found that Barton had completed the psychological evaluation but lacked stable housing and struggled with the children's behavior during visitation.
BS was born on April 12, 2017, and on April 24, DHS filed a third petition for emergency custody and dependency-neglect alleging that BS was dependent-neglected based on DHS's custody of his siblings. An ex parte order of emergency custody was entered the same day. A probable-cause order was entered on April 27, and an adjudication order was entered on May 25, finding BS dependent-neglected.
On September 28, the court entered a permanency-planning order finding that Barton had been complying with the case plan and the court's orders and was making significant and measurable progress toward reunification. The court further found that placement of the children with Barton would occur no later than three months from September 22, 2017. A fifteen-month-review order was entered on December 29, wherein the court found that Barton had complied with the case plan, yet the court authorized a plan for adoption.
On March 22, 2018, DHS filed a petition for termination of parental rights alleging that termination was in the children's best interest and that two statutory grounds for termination existed: (1) subsequent factors, Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(a) (Supp. 2017) and (2) aggravated circumstances, Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(a)(3)(A) & (B) .
At the termination hearing, Kelli Cole, a DHS foster-care and protective-services supervisor, testified that both JB and ZS had been taken into DHS custody in December 2015 because of environmental neglect and inadequate supervision. Cole stated that JB and ZS were returned to Barton in a trial placement in February 2016; however, DHS received hotline calls that the children were leaving home without Barton's knowledge. One of the children was found by the police at a store. Cole testified that DHS continued to provide services, and in June 2016, an order *63 was entered returning custody of JB and ZS to Barton. However, following a home visit in August 2016, DHS found that there was no electricity in the home and that Barton had been evicted. JB and ZS were removed again from Barton's custody. Cole said that BS was taken into DHS care in April 2017 because his siblings had been adjudicated dependent-neglected.
Cole further testified that Barton had completed all the services DHS offered her. She participated in two parenting classes, watched the video "The Clock is Ticking," visited the children, and submitted to a psychological evaluation and therapy. Cole stated that despite these services, Barton has not "overcome being an ineffective parent" and is not "able to demonstrate the basic parenting skills right now." Cole said that Barton's primary problem was her inability to tend to all three children at one time. Cole said that the children would be subject to potential harm in Barton's custody if the boys got out of the home without her knowledge: "She has not exhibited the skill set that shows that she's capable of keeping these kids safe." Cole also noted that the psychological evaluation recommended that Barton could not care for the children by herself. Cole testified that Barton provided a list of thirteen people she said could help her, but DHS was able to contact only four of them, and none were willing to live with Barton full time. One or two said they would help a "majority of the time," but these people were found to be inappropriate. Cole testified that there are no other services that DHS can provide to Barton.
Cole also stated that during the case, Edgar Lee Davis Jr. began living with Barton. Davis's brother, Devon Davis, also moved into Barton's home and was physically abusive to Barton. Finally, Cole testified that the children are adoptable, that there are no barriers to adoption, and that their foster parents are interested in adopting them.
DHS program assistant Courtney Francomano testified that she scheduled and supervised forty-three of Barton's visitations, which were held at a play area in a mall that had the same entrance and exit. Francomano testified that Barton had a difficult time managing the three children and lost at least one of the children during twenty-two of the visitations she observed. Francomano testified that it happened with all three children and that it was a constant issue. Francomano stated that she had not seen any progress over the course of time she had been observing Barton's visitation. Francomano further testified that while Davis was present for some of the visits, he was either on his cell phone or not paying attention.
Barton testified that she did not want her parental rights terminated. She stated that she worked hard on the case plan and had learned from the services provided by DHS. She said that she was trying her best to supervise her children but admitted that it is difficult. She said that Davis helped her with the children during visitations, and she denied that the children were constantly wandering off during visitations. She said that since April 2017, her home has been appropriate and that there would not be any safety issues if the children were returned to her custody. Barton also testified that there were people willing to help her.
Barton also said that Devon Davis had lived in her home for about four months. She said when Devon threatened to hit her "between her eyes," she called the police because she was afraid of him, and Devon was arrested. Barton also testified that during the case, she lived in a women's shelter for three months because BS's father "was beating" her.
*64 At the conclusion of the hearing, the circuit court orally granted DHS's petition to terminate Barton's parental rights to the children. On October 31, 2018, the circuit court entered a termination order finding that DHS proved both the subsequent-factors and the aggravated-circumstances grounds and proved that termination was in the best interest of the children. In its order, the court relied on the testimony of both Cole and Francomano, which the court found credible, and Barton's psychological evaluation. Barton appealed from this order.
Termination-of-parental-rights cases are reviewed de novo. Pine v. Ark. Dep't of Human Servs. , 2010 Ark. App. 781, at 9, 379 S.W.3d 703, 708. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. Id. , 379 S.W.3d at 708. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. Id. , 379 S.W.3d at 708. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. , 379 S.W.3d at 708. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. Id. , 379 S.W.3d at 708.
Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. Id. , 379 S.W.3d at 708. As with all issues addressing child placement, the appellate court affords heightened deference to the circuit court's superior position to observe the parties personally and to weigh credibility. Dinkins v. Ark. Dep't of Human Servs. , 344 Ark. 207, 215, 40 S.W.3d 286, 292-93 (2001).
Barton first argues that the circuit court erred in finding grounds supported termination of her parental rights. The circuit court concluded that the aggravated-circumstances ground[1] supported termination based on the evidence that (1) the children had been removed from Barton's custody due to environmental neglect and parenting issues; (2) the case had been open for three years; (3) DHS had offered services, and despite these services, Barton continued to manifest the inability to implement basic parenting skills such as not leaving the children unattended; and (4) by Barton's own admission, she has a problem focusing on the tasks needed to protect her children. The court also cited the psychological evaluation that concluded there is little likelihood that any further services could result in a successful reunification.
Barton challenges these findings by arguing that the court erred in concluding she was unable to parent on the basis of evidence that her children were "regularly getting away from [her] and beginning to wander off during visitations." Barton argues it was an "unfair assessment" of her supervisory skills to force her to exercise her visits at the mall-an "environment rife with potential for chaos."
In light of the evidence in this case, we hold that the circuit court did not clearly *65 err in finding that there is little likelihood that services to the family will result in successful reunification. The evidence showed that after completing nearly three years of DHS services, Barton has not learned how to adequately supervise and protect her children. Barton has a long history with DHS and its services dating back to 2008 that includes protective-services cases in 2013, 2014, and 2016, and a dependency-neglect case in 2015. During the 2015 and 2016 dependency-neglect cases, DHS provided services, and Barton completed them; however, the evidence demonstrates that she did not learn from the services. When she received a trial placement in February 2016, hotline calls were made reporting that the children were leaving the home without Barton's knowledge. When custody of JB and ZS was returned to Barton in 2016, the children were removed from Barton a second time due to environmental neglect.
Cole's testimony, which the circuit court found credible, established that despite complying with the case plan, Barton failed to learn how to parent, she lacks the mental capacity to watch all three of her children at the same time, the children are able to wander away from Barton without her knowledge, and she requires full-time live-in assistance to care for her children. Francomano, whose testimony the circuit court also found credible, stated that despite only one way in and out of the play area at the mall, in twenty-two of the forty-three visits she supervised, Barton would lose one of her three children. Francomano said it was a constant issue. Barton conceded that it was sometimes difficult for her to keep an eye on her three children. According to Francomano, Davis was no help. The children were able to wander off many times without being noticed by either him or Barton.
Finally, the psychological evaluation corroborated the testimony of both Cole and Francomano by concluding that
Barton's ability to [e]ffectively and adaptively problem solve her real-life problems can be difficult for her based upon her intellectual functioning level without the help of a good support system. It is highly recommended that she has several means of support (e.g. family, counseling, church family) to continue to help her with daily living skills and decisions, major decisions regarding her current custody situation and the potential reunification with and care of her children.
This evidence supports Cole's testimony that Barton lacks the mental capacity to care for her children and that Barton requires full-time assistance, which Cole stated is not available.
Based on this evidence, we cannot say that the circuit court clearly erred in finding that there is little likelihood that services to Barton will result in a successful reunification. Therefore, we affirm the circuit court's aggravated-circumstances ground in support of termination. Because proof of only one statutory ground is sufficient to terminate parental rights, Hooks v. Ark. Dep't of Human Servs. , 2017 Ark. App. 687, at 11, 536 S.W.3d 666, 673, we do not address Barton's challenge to the subsequent-factors ground.
Barton also challenges the circuit court's finding that termination was in the best interest of the children. In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning *66 the child to the custody of the parent. Pine , 2010 Ark. App. 781, at 9-10, 379 S.W.3d at 708-09 (citing Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) [Supp. 2017] ). The evidence presented on potential harm must also be viewed in a forward-looking manner and considered in broad terms, but a circuit court is not required to find that actual harm will result or to affirmatively identify a potential harm. Chaffin v. Ark. Dep't of Human Servs. , 2015 Ark. App. 522, at 5, 471 S.W.3d 251, 255.
In support of its best-interest finding, the circuit court concluded that the children are adoptable and at risk of potential harm should they be returned to Barton's custody. The court found that Barton was in an unstable relationship with Davis, which is consistent with her statement to the psychologist during her evaluation that "she always ends up with the wrong man who won't help her kids." The court also cited Barton's lack of focus when supervising her children, stating that the children are at risk of getting away from her, which happened during twenty-two out of thirty-five[2] visitations.
Barton does not challenge the court's adoptability finding. She does challenge the court's potential-harm finding, arguing that she had remedied the problems with her home and that she should have been allowed to have visitation there instead of at the mall.
Barton's argument is nothing more than a request for our court to reweigh the evidence in her favor, which we cannot do. The circuit court found the testimony of Cole and Francomano was credible. The sum of their testimony was that Barton lacks the mental capacity to care for all three of her children and that they consistently got away from her during visitations despite the confines of the area and Barton's and Davis's presence. The credibility of any witness's testimony is to be assessed by the trier of fact-who may believe all, part, or none of it. Brumley v. Ark. Dep't of Human Servs. , 2015 Ark. App. 90, at 12, 455 S.W.3d 347, 355. This testimony supports the circuit court's potential-harm finding.
Other evidence supports the potential-harm finding. Cole stated environmental neglect is not an issue for Barton when the children are not in the home with her; however, when the children are home, Barton has issues keeping the home safe. Moreover, there is evidence that Barton has a history of being with abusive men. During this case, she lived at a women's shelter for three months because BS's father beat her. She planned to marry and live with her neighbor after she was evicted in August 2016; however, he locked her and her children out of his apartment, leaving them homeless. After she married Davis, his brother moved into their home and was physically abusive to her. Barton reported her problems with men to the psychological examiner. She said that she "always ended up with the wrong men and they end up cheating on me or beating me up and when I finally get away from them they don't help me with the kids and I get to feeling overwhelmed." On the basis of this evidence, we hold that the circuit court did not clearly err in finding that the children were at risk of potential harm if returned to Barton's custody. Accordingly, we affirm the circuit court's best-interest finding.
Finally, Barton argues that the circuit court abused its discretion in admitting *67 into evidence the psychological evaluation. She contends that the report is inadmissible hearsay. However, this argument is not preserved for appeal because it was not made at the termination hearing. Barton's counsel's stated: "I will object unless the psychologist testifies," and "[I]t's my position that the psychologist needs to be here to testify." This vague objection did not state the legal basis for the objection. While this objection could be a hearsay objection, it could also be an authentication objection or a right-to-cross-examine objection. Ark. Dep't of Human Servs. v. Huff , 347 Ark. 553, 560, 65 S.W.3d 880, 886 (2002) (holding that the right to cross-examination is especially important in termination-of-parental-rights cases).
Because Barton failed to raise a hearsay objection below, her argument is not preserved for appeal. Samuels v. Ark. Dep't of Human Servs. , 2014 Ark. App. 527, at 4, 443 S.W.3d 599, 602 (holding that if a specific argument is not raised at trial, it is not preserved on appeal). Therefore, we affirm the admission of the psychological evaluation and hold that the circuit court did not err in relying on the report to support its grounds and potential-harm findings.
We further note that any error in admitting the evaluation was harmless. We will not reverse a circuit court's ruling on admissibility of evidence absent a manifest abuse of discretion. Hooks , 2017 Ark. App. 687, at 13, 536 S.W.3d at 674. A mere showing that the circuit court erroneously admitted evidence will not support a reversal absent a showing of prejudice. Id. , 536 S.W.3d at 674. Without any showing of prejudice, any judicial error as to the admissibility of evidence is harmless error and cannot be grounds for disturbing a circuit court's order. Id. at 13-14, 536 S.W.3d at 674. When evidence is improperly admitted but the same evidence is admitted through another source, there is no reversible error. Id. at 14, 536 S.W.3d at 674. As set forth above, there is separate, independent evidence (the testimony of Cole, Francomano, and Barton) that supports the circuit court's grounds and potential-harm findings.
Affirmed.
Abramson and Brown, JJ., agree.

Relevant to this appeal, aggravated circumstances means that a determination has been made by a court that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(A) & (B) (Supp. 2017).

Francomano testified that the children got away from Barton during twenty-two out of forty-three visits.