Cite as 2020 Ark. App. 484

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-20-348

| | |
|---|---|
| NANCY MARTINEZ<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** October 21, 2020<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-17-482]<br><br>HONORABLE SHANNON L. BLATT, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Nancy Martinez appeals the Sebastian County Circuit Court's order terminating her parental rights. We affirm.

The Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect on November 20, 2017, concerning Nancy's son, R.P.(1). An affidavit attached to the emergency petition stated that Nancy was arrested due to a failure to pay fines and was sentenced to twenty-two days in jail. During Nancy's incarceration, there was a dispute between R.P.(1)'s father and Nancy's friend as to who should care for the child. Police were called to respond to the dispute, and the police subsequently contacted DHS.

DHS exercised an emergency hold on R.P.(1), and the circuit court entered an ex parte order for emergency custody placing R.P.(1) in DHS's custody. The court entered a probable-cause order on December 5, 2017, in which it found that R.P.(1) should remain in foster care.

The court later adjudicated R.P.(1) dependent-neglected as a result of parental unfitness based on the mother's incarceration. Nancy remained incarcerated at the time of the adjudication hearing and was six months pregnant. The goal of the case was established as reunification, and Nancy was ordered to complete parenting classes; visit R.P.(1) regularly; submit to a psychological evaluation and a drug-and-alcohol assessment; participate in an evaluation for domestic-violence and anger-management classes; complete the recommendations from each evaluation or assessment; submit to random drug screens; maintain sobriety; resolve any criminal issues and comply with all conditions relating to her criminal sentence; maintain regular contact with the caseworker; and maintain stable housing, income, and transportation.

Approximately three months after the adjudication hearing, Nancy was no longer incarcerated and gave birth to R.P.(2). Nancy went to the emergency room because she felt ill, and doctors learned Nancy was "very sick with leukemia[.]" The doctors performed an emergency cesarean, and R.P.(2) was born nineteen days early. The delivery had complications in that Nancy had to be sedated and intubated, which resulted in R.P.(2) being born sedated. He was admitted to the NICU. On learning of R.P.(2)'s birth, DHS went to the home where Nancy would be living with a friend. DHS determined that the home was not suitable for the baby. Around this time, Nancy told DHS that she planned to consent to the termination of her parental rights to an older child who is not a party to this case. DHS noted concerns that Nancy was depressed. DHS exercised an emergency hold on R.P.(2). DHS then filed a petition for emergency custody and dependency-neglect on March 12, 2018, which the circuit court granted. Following a probable-cause hearing, the circuit court entered an order finding that probable cause continued to exist and directing that R.P.(2) remain in DHS custody.

On April 23, 2018, the circuit court held an adjudication hearing for R.P.(2) and a hearing to review R.P.(1)'s case. It subsequently entered a review order in which it also adjudicated R.P.(2) dependent-neglected due to parental unfitness. The circuit court found that it was in both children's best interest to remain in foster care and noted that R.P.(1) and R.P.(2) were placed together in foster care. The circuit court also found that Nancy had not complied with the case plan or court orders as she had again been incarcerated. The circuit court continued its prior orders from R.P.(1)'s adjudication but exempted Nancy from working and paying child support due to her leukemia.

A permanency-planning hearing was held on September 24, 2018. The circuit court concluded that it was in the children's best interest to remain in foster care with a goal of reunification but added a concurrent goal of adoption. Nancy was found to be in partial compliance with the case plan and court orders.

The parties returned to court on December 17, 2018, for a fifteen-month-review hearing. The circuit court concluded the goal of the case would be adoption with a concurrent goal of reunification. The circuit court again found that Nancy was in partial compliance with the case-plan requirements and court orders. The court noted that there was a significant amount of work that Nancy still needed to do in order to pursue reunification. Specifically, the circuit court found that Nancy had missed or was late to several visits with the children, failed to maintain contact with DHS, and had tested positive for methamphetamine. The circuit court also found that Nancy's psychological evaluation noted deficiencies in her parenting skills, which DHS also documented during visits, and due to these deficiencies, the court required Nancy to complete additional parenting classes.

Following a review hearing on June 10, 2019, the circuit court again found that Nancy was in partial compliance with the case plan and court orders. While she had completed some services, she still exhibited angry outbursts, had an inconsistent drug screen on April 19, 2019, did not have her own transportation, continued to be argumentative with DHS, and needed redirection and assistance during visitation. The circuit court continued its prior orders but added a requirement that Nancy participate in family counseling with R.P.(1) and submit to a hair-follicle examination.

At two subsequent hearings, the court continued to make the same findings. Nancy was in partial compliance with the case plan and had completed some services but still exhibited volatile behavior and angry outbursts that necessitated calling law enforcement. It also noted that Nancy still needed assistance and redirection when interacting with her children. On March 28, the attorney ad litem filed a motion to suspend visitation, alleging that R.P.(1) became hysterical before visits with Nancy and was physically aggressive toward R.P.(2) after such visits. The attorney ad litem subsequently withdrew that motion, and DHS and the attorney ad litem filed a joint petition for termination of parental rights on December 4.

The court held a termination hearing over the course of two days in February 2020. Dr. Michelle Eckes, the children's physician who had treated the boys for approximately a year and a half, testified that she had recommended that both boys begin counseling to address problems such as nightmares, chewing on objects, and aggressive behavior. Dr. Eckes testified that the children need a stable routine and home environment.

Catharine Stransky, the family-service worker assigned to the family since April 2019, testified that although she believed Nancy had completed all required services, DHS remained concerned with her ability to parent her children. Stransky testified that beginning in August 2019, she supervised the majority of Nancy's visitation with the children and worked with Nancy one-on-one to try to improve her parenting skills. Stransky testified that Nancy had issues with discipline and understanding how to be flexible but firm in maintaining routines for the children. She stated that Nancy could not handle R.P.(1) during meltdowns and tantrums. Stransky also noted that DHS was concerned that despite being warned that R.P.(1) has an intolerance to foods containing red dye, Nancy continued to give him those foods. Notably, Stransky testified that since beginning family therapy with Nancy, the children's behavior had progressively worsened with each visit. R.P.(1)'s aggression and meltdowns increased, and R.P.(1) began to wet the bed. Stransky testified that she did not believe any additional services would assist in reunifying the family. She believed that the children would be at a risk of harm if returned to Nancy because she did not believe Nancy had the necessary skills to parent her children.

Robin Williford, the therapist who had been working with the family since March 28, 2019, testified that R.P.(2) was doing much better and was no longer as afraid of Nancy. Williford stated that she had received conflicting reports with regard to visitation with Nancy but that she had observed Nancy responding appropriately to the children. The family therapist also raised concerns about Nancy's romantic relationships and her ability to assess whether a person is appropriate to have around her children.

The children's foster mother, Heather Blanton, testified that the children were both doing "really well" but confirmed the prior testimony that there had been some concerning behaviors from the children, particularly R.P.(1), related to visitation with Nancy.

Dr. Robert Lewis Spray, Jr., a psychologist who performed a psychological evaluation on Nancy, testified that she may have some limitations of her parenting and verbal-reasoning skills. He believed that she exhibited deficiencies in her ability to parent. Dr. Spray acknowledged that he had no contact with Nancy since the evaluation and no knowledge of whether her parenting skills had subsequently improved.

The CASA volunteer, Carol Shurr, testified that she observed Nancy at approximately fifteen visits and stated that Nancy seemed to care for her children but did not have strategies to deal with them. Shurr stated that she did not believe there had been much improvement in Nancy's parenting during the course of the case.

Nancy also testified at the termination hearing. Nancy was questioned about the criminal history of a man named Dwaun Davis, whom she had identified on Facebook as someone she was dating. She denied being in a relationship with Davis and stated that she had no personal knowledge of his criminal history. Nancy disagreed with Stransky's assessment of the visitation but acknowledged that DHS had expressed concerns about her parenting skills. Nancy also testified that she had two other children. One of those children had passed away, but one had been removed from the home of a relative and adopted through a separate case in a different county.

Stransky was recalled to the stand, and she reiterated that she did not believe Nancy was capable of parenting her children on the basis of her observations during visitations.

6

Amethyst Mays, a program assistant for DHS, testified that she supervised Nancy's visits with her children for approximately a year and a half. Mays testified that she had not seen Nancy behaving inappropriately toward her children and believed that Nancy made improvement in her parenting during the case.

At the conclusion of the hearing, the circuit court found that termination of Nancy's rights was in the children's best interest and warranted under the failure-to-remedy, subsequent-factors, and aggravated-circumstances grounds. Nancy filed this timely appeal.

Nancy's first argument on appeal is a challenge to the court's best-interest finding. Specifically, she does not challenge the court's finding that the children are adoptable. She claims that the court erred in finding that the children would face a significant risk of potential harm if returned to her care. We review termination-of-parental-rights cases de novo. *Barton v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 239, at 6, 576 S.W.3d 59, 64. Additionally, we will not reverse a termination order unless the findings were clearly erroneous, meaning "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Id.* at 6–7, 576 S.W.3d at 64. Further, we must give due regard to the circuit court's ability to assess a witness's credibility. *Id.* at 7, 576 S.W.3d at 64.

Nancy argues there was insufficient evidence to support the circuit court's potential-harm finding. She contends that because she completed all required services and the testimony regarding her parenting skills was overly critical, the court's best-interest finding was clearly erroneous. We disagree.

The children had been in foster care for approximately two years. Numerous witnesses at the termination hearing identified significant unresolved issues with Nancy's ability to parent. Dr. Eckes testified to the children's need for stability and routine in their lives. Moreover, despite the anger-management and parenting classes, Nancy still engaged in angry outbursts during the case that necessitated law-enforcement intervention. By arguing that the testimony critical of her parenting skills was too harsh, Nancy is essentially asking this court to reweigh the evidence, which we cannot do. *Blasingame v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 71, at 7, 542 S.W.3d 873, 877. We affirm on this point.

Nancy also challenges the court's findings as to statutory grounds for termination. While the court found that termination was warranted under both the aggravated-circumstances and other-subsequent-factors grounds, only one ground is necessary to affirm. *Gonzalez v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 425, at 11–12, 555 S.W.3d 915, 921. We find no reversible error in the court's determination that there was little likelihood that further services would result in successful reunification, and termination based on aggravated circumstances was warranted. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(A)–(B)(i)* (Supp. 2019). While Nancy completed services such as anger-management and parenting classes, there was significant evidence that the services did not result in needed improvements to her ability to parent her children. The caseworker testified that despite two years of services, Nancy remained unable to manage her children during visitation and repeatedly failed to comply with dietary restrictions related to R.P.(1)'s intolerance to red dye. As a result, the children exhibited stress and behavioral disruptions related to visitation with Nancy. The CASA advocate testified that despite all the services she received, Nancy could not discipline her children in

8

an appropriate way and needed constant guidance and redirection during visits. Nancy exhibited volatile behavior and aggressive outbursts that required police intervention. Dr. Spray testified that Nancy showed cognitive deficiencies in her verbal and reasoning abilities, which diminished her capacity to parent her children. There was, therefore, sufficient evidence to support the court's finding that additional services would not lead to successful reunification. We affirm.

Affirmed.

GRUBER, C.J., and MURPHY, J., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.