Cite as 2021 Ark. App. 366

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-21-98

| | | |
|---|---|---|
| | | **Opinion Delivered** September 29, 2021 |
| SUMMER RAULS | APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35JV-20-63] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | APPELLEES | HONORABLE EARNEST E. BROWN, JR., JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## PHILLIP T. WHITEAKER, Judge

Appellant, Summer Rauls, appeals a Jefferson County Circuit Court order terminating her parental rights to DG4. Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j) (2021), Rauls's counsel has filed a motion to be relieved as counsel and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of our court sent copies of the brief and the motion to withdraw to Rauls, informing her of her right to file pro se points for reversal pursuant to Rule 6-9(j)(3); she has not done so. After examining the record, we are satisfied that there are no issues of arguable merit to support an appeal. We therefore affirm the termination decision and grant counsel's motion to withdraw.

I. *Factual and Procedural History*

Summer Rauls has an extensive history with the Arkansas Department of Human Services (Department). She is the biological mother of DG1, DG2, CG, and DG3. In September 2018, the Department removed DG1, DG2, and CG from the care and custody of Rauls and instituted a dependency-neglect action for the safety of the children.[1] The Department removed the children because Rauls had been arrested in a domestic-violence incident involving Charles Gant. At the time of her arrest, Rauls was pregnant with DG3 and under the influence of drugs (THC) and alcohol. In that dependency-neglect proceeding, the Department provided Rauls a myriad of services designed to rehabilitate Rauls to prevent future drug and alcohol abuse. Despite these services, Rauls continued to test positive.

In December 2018, the Department removed newborn DG3 from the care and custody of Rauls after both Rauls and DG3 tested positive for cannabis. After DG3's removal, the Department continued to provide Rauls with services.[2]

Despite these services, Rauls continued to test positive for alcohol and controlled substances, including cocaine, methamphetamine, and THC. Her substance abuse continued even during her pregnancy with DG4. During her seventh month of pregnancy with DG4, Rauls tested positive for THC and cocaine. In addition to drug use, Rauls

---

[1]This separate dependency-neglect action is only discussed herein for background purposes.

[2]The services provided included employment services, drug assessments, drug screenings, psychological evaluation, parenting classes, legal services, inpatient and outpatient substance-abuse treatment, supervised visitation, home visits, housing, transportation, and individual and family counseling.

continued to be involved with domestic violence. In January 2020, Rauls assaulted Gant with the altercation being captured in a video that was later posted online.

With all the continued substance abuse and violence, the Department was concerned about Rauls' unborn child and scheduled a staffing. Rauls did not attend, allegedly on the advice of counsel. Ultimately, the Department determined it did not have jurisdiction over Rauls's unborn child. It did, however, continue to provide services to Rauls, including a residential substance-abuse-treatment program. Unfortunately, Rauls attended this program only three days because she was admitted into UAMS where DG4 was born prematurely on January 25, 2020, weighing 1 pound 14.3 ounces.

After the birth of DG4, the Department removed him from the care and custody of both parents, Rauls and Gant.[3] Although the meconium testing for DG4 was negative, Rauls admitted using THC during her pregnancy, and the Department filed a petition for dependency-neglect.

The court adjudicated DG4 dependent-neglected due to parental unfitness and made a specific finding of aggravated circumstances based on little likelihood that services would result in successful reunification. The court initially set reunification as a goal of the case and ordered the Department to offer services. However, by the permanency-planning hearing in August 2020, the court had changed the goal of the case to adoption on the basis of its previous finding of aggravated circumstances; the parents' lack of compliance with the

[3]Gant was found to be DG4's putative father, and the court found that he had sufficient significant contacts with the child for his rights to have attached. Although the court also terminated Gant's parental rights, he did not appeal the termination decision and is not a party to this appeal. Therefore, the facts have focused only on Raul's actions and those services provided to her.

3

court's orders; the parents' continued illegal drug and alcohol use; their failure to complete rehabilitation on numerous occasions; and their overall history with the court.[4]

Shortly thereafter, the Department filed a petition for termination of parental rights. In November 2020, the court conducted a termination hearing. Rauls and Gant did not attend the hearing. They initially appeared at the courthouse but left once they were asked to submit to a drug screen. As a result, the case proceeded with Audrey Martin, a supervisor with Jefferson County DCFS; Patricia Shavers, an adoption specialist; and Kyla Tubbs, the foster mother, testifying in support of termination. On November 19, 2020, the court entered an order terminating Rauls's parental rights, citing aggravated circumstances and subsequent other factors as grounds for termination. The court further found that termination was in DG4's best interest; that he is adoptable; and that he would be subject to potential harm if returned to Rauls's care. Rauls appeals the termination decision.

## II. *Standard of Review*

We review termination–of–parental–rights cases de novo. *Hune v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 543. We will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Holmes v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 495, 505 S.W.3d 730.

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and

---

[4]The permanency-planning order was not filed until September 4, 2020.

4

(2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2021). The court must also find by clear and convincing evidence one or more of the grounds for termination listed in section 9-27-341(b)(3)(B) in order to terminate parental rights.

## III. *Analysis*

Counsel has filed a no-merit brief addressing two adverse rulings—the termination decision and an evidentiary ruling—and claiming that there are no issues of arguable merit for reversal. We agree and conclude that there can be no meritorious challenge to the sufficiency of the evidence to support the termination of Rauls's parental rights or to the circuit court's evidentiary ruling.

## A. Termination of Parental Rights

Our caselaw recognizes that the termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Fox v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735. In termination-of-parental-rights matters, the circuit court is required to follow a two-step process by finding first that the parent is unfit and second that termination is in the best interest of the child. *T.J. v. Ark. Dep't of Hum. Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997); *Smith v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 753, 431 S.W.3d 364. As a result, the Department bears a heavy burden in seeking to terminate the relationship of parent and child. *Fox*, *supra.*

1. *Statutory grounds*

To terminate parental rights, a court must find sufficient proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). Here, the court terminated Rauls's parental rights finding both aggravated circumstances and subsequent other factors as grounds for termination. Although the circuit court found two statutory grounds for termination, only one ground is necessary to support termination. *Reid v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 187, 380 S.W.3d 918. We hold that there was ample evidence submitted to support the court's subsequent-other-factors finding.

The subsequent-factors ground, codified at Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)*, provides that termination is appropriate when

> other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parents.

Regarding this ground, the circuit court found that Rauls had exhibited a disinterest in DG4 throughout the case, was not participating in case-plan services, and was not complying with the court's orders. The Department presented testimony that Rauls had not maintained contact with DG4 since August 2020, that DG4 was medically fragile, and that Rauls had made no effort to contact the Department regarding DG4's condition. Moreover, the court noted that Rauls had participated in only one staffing and, out of the four court hearings scheduled in the case, had attended only two. In fact, Rauls left the termination hearing after being asked to submit to a drug screen. As a result, the court concluded that Rauls

appeared to have voluntarily disconnected herself from DG4 and that the issues that caused DG4 to be taken into custody (illegal drug usage, domestic violence, and inadequate housing) still existed. As such, the court found that her actions demonstrated an incapacity, indifference, or unwillingness to rehabilitate the circumstances preventing the placement of DG4 into her custody.

The court's findings in this regard are supported by the testimony and evidence presented at the termination hearing and are sufficient to support a subsequent-other-factors finding. At the very least, the evidence reflects Rauls's failure to comply with the case plan and the court's orders, and we have stated that a failure to comply with court orders can serve as a subsequent factor on which termination of parental rights can be based. *See McCormick v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 44, 594 S.W.3d 115; *Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915. Accordingly, we hold that the circuit court did not clearly err in finding that the Department proved this ground.

2. *Best interest*

To terminate parental rights, a court must also find that termination of parental rights is in the child's best interest, taking into consideration two statutory factors: (1) the likelihood of adoption if parental rights are terminated and (2) the potential harm caused by continuing contact with the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Here, the court considered both statutory factors in light of the overall evidence, finding that termination was in DG4's best interest. Counsel contends that there are no issues of arguable merit for reversal in challenging this best-interest finding. We agree.

7

Concerning adoptability, the Department presented ample evidence that DG4 is adoptable. Admittedly, DG4 has significant medical conditions requiring a strict feeding schedule and a clean and stable environment. The adoption specialist, however, testified he is adoptable even with his medical issues and that there were 146 families that would accept a child with his characteristics. *Reed v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 416, 375 S.W.3d 709. The foster mother also testified that she was willing to adopt DG4.

Likewise, the Department produced evidence of potential harm. At the time of termination, Rauls had had virtually no contact with DG4 for several months, had not shown any significant interest in learning about properly caring for him, had moved with no forwarding address, and had not addressed her substance-abuse or domestic-violence issues. Placing a child with DG4's medical issues in such a risky and unstable environment would be potentially harmful to him. Accordingly, the circuit court's finding that termination was in DG4's best interest was not clearly erroneous.

## B. Adverse Ruling

Counsel also identified one adverse evidentiary ruling. At the termination hearing, the Department supervisor was asked whether the court had made a finding that Rauls had not made significant, measurable progress in the case involving DG4's siblings. Counsel objected arguing that DG4's case should stand on its own. The court overruled the objection.

We will not reverse a circuit court's ruling on admissibility of evidence absent a manifest abuse of discretion. *Barton v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 239, 576 S.W.3d 59. A mere showing that the circuit court erroneously admitted evidence will not

support a reversal absent a showing of prejudice. *Id.* Without any showing of prejudice, any judicial error as to the admissibility of evidence is harmless error and cannot be grounds for disturbing a circuit court's order. *Id.* at 13–14, 536 S.W.3d at 674. Here, although the court overruled the objection, the witness did not answer, and the Department did not pursue that line of questioning further. Thus, even if the court's ruling was incorrect, there was no prejudice shown.

Having carefully examined the record and the brief, it is clear that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination–of–parental–rights cases and that this appeal is wholly without merit. Accordingly, we affirm the order terminating Rauls's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

GRUBER and VAUGHT, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.