Cite as 2023 Ark. App. 8

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-22-412

| | |
|---|---|
| SAMANTHA NAVRAT<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered January 18, 2023<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO.66FJV-20-266]<br><br>HONORABLE DIANNA HEWITT LADD, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

**N. MARK KLAPPENBACH, Judge**

Appellant Samantha Navrat appeals the 2022 circuit court order that terminated her parental rights to her three daughters who were born in 2013, 2015, and 2019.[1] Samantha's counsel has filed a motion to withdraw and a no-merit brief pursuant to *Linker-Flores v. Ark. Dep't of Hum. Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9, setting forth all adverse rulings from the termination hearing and asserting that there are no issues of arguable merit to raise on appeal. The clerk of this court mailed a certified copy of counsel's motion and brief to Samantha informing her of her right to file

---

[1] The father of the oldest child consented to the termination of his parental rights. The father of the middle child was incarcerated for almost the entirety of this case; his parental rights were terminated, but he is not a party to this appeal. The alleged father of the youngest child was later determined not to be the biological father, so he was ultimately dismissed from the case.

pro se points for reversal, but she has filed no points. We affirm the circuit court's order and grant counsel's motion to withdraw.

In January 2020, a protective-services case was opened because the youngest child tested positive for drugs at her birth. The girls were removed from their mother's care in July 2020 when police came to Samantha's home and found it filthy with animal urine and feces and found the children dirty and hungry. Samantha was visibly intoxicated and tested positive for methamphetamine. The girls were adjudicated dependent-neglected due to Samantha's drug use and environmental neglect. Over the course of the next year and a half, the Arkansas Department of Human Services (DHS) provided reunification services to Samantha to help her correct the situation.[2] Samantha completed some parenting classes and some drug treatment, and she submitted to limited psychiatric and drug-and-alcohol assessments. She never completed those services or reached sustained sobriety. In November 2020, Samantha's hair-follicle test was positive for THC, amphetamines, and methamphetamine. Samantha sporadically appeared for her visits with the children; for example, she visited only one time between Christmas 2020 and the end of March 2021. Samantha did not appear for the March 2021 permanency-planning hearing.

DHS filed a petition to terminate parental rights in June 2021. Samantha's hair-follicle test in July 2021 was positive for THC, amphetamines, and methamphetamine.

---

[2]Those services included referrals for drug-and-alcohol assessments, parenting classes, psychological evaluations, counseling, transportation, housing assistance, residential drug treatment, visitation, case management, caseworker visits, and case-plan meetings.

Samantha did not appear at the August 2021 review hearing. She found her own drug-rehabilitation program in December 2021 but relapsed and was discharged the same month. She went back to residential treatment but signed herself out after two days, leaving with her new boyfriend she had met in treatment.

Samantha was present for the termination hearing conducted in February 2022. Samantha was not in treatment for her drug problems or her mental health, although she said she was trying to get into another program. Samantha tested positive for amphetamines the day of the termination hearing. She had not maintained stable housing: sometimes she gave DHS an invalid address; at times she was homeless; at times she was staying with friends. At the termination hearing, she said she had gotten a part-time job as a dishwasher at a senior center but had not started; she lacked stability in employment.

A DHS caseworker testified that all three girls are adoptable, despite one of the children having special needs. The caseworker stated that the disabled child was in a placement that was willing to care for her long term and that the other girls, who were placed together in a foster home, had no special needs that would impede their adoption.

Samantha conceded that she was unable to care for her disabled middle daughter, who had cerebral palsy, a feeding tube, and poor eyesight, and who was unable to hear, speak, or walk. Samantha consented to the termination of her rights as to that child. As to the other two girls, Samantha acknowledged that for the last month, she had been living with her boyfriend (whom she had meet at rehab) and his brother, whose home was inappropriate for her children. Samantha did not have her own transportation or a driver's license; she

relied on her boyfriend. Samantha, instead, asked for more time to improve her circumstances and become the sober, stable parent that her daughters needed. The attorney ad litem urged that all parental rights be severed.

The circuit court found that DHS had proved by clear and convincing evidence three statutory grounds for termination (the one-year-failure-to-remedy ground, the subsequent-other-issues ground, and the aggravated-circumstances ground)[3] and that it was in the girls' best interest to terminate Samantha's parental rights. The circuit court found that Samantha had manifested an incapacity or indifference to remedy the situation, that she had "failed to engage" in DHS's reunification services, and that what efforts Samantha put forth were "too little way too late." The circuit court explained that it had considered the likelihood that the girls would be adopted and the potential harm to the girls if returned to their mother's custody. The circuit court entered a detailed order memorializing its findings, and this appeal followed.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Gilbert v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 256, 599 S.W.3d 725. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential

---

[3]The statutory grounds are failure to remedy (Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2021)); subsequent other issues (Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)); and aggravated circumstances (Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)*).

4

harm caused by returning custody of the child to the parent. *Id.* Statutory grounds and a best-interest finding must be proved by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.* We review termination-of-parental-rights cases de novo. *Id.* The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In evaluating a no-merit brief, the issue for the appellate court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *See Rocha v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 454, 637 S.W.3d 299.

There could be no issue of arguable merit to raise on appeal as to the sufficiency of the evidence to support the statutory grounds. Proof of only one statutory ground is sufficient to terminate parental rights. *Davis v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 406, 587 S.W.3d 577. We focus on the one-year-failure-to-remedy ground defined in Ark. Code Ann. § 9-27-341(b)(3)(B)(i), which permits termination when the child is adjudicated dependent-neglected and has been out of the parent's custody for a year, and despite meaningful efforts by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

As explained by Samantha's counsel, DHS was found to have provided reasonable efforts to help Samantha reunify with her children throughout this case, and Samantha was

unwilling or unable to become stable in sobriety, housing, employment, or her mental health. She made limited efforts at drug rehabilitation but had relapsed on methamphetamine (her primary drug), testing positive for that drug when the termination hearing was conducted. Samantha was admittedly unable to care for one of her daughters, and she had done "too little way too late" to prepare herself to care for her other two girls. A child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. *Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, 585 S.W.3d 725. This record demonstrates that there could be no meritorious appeal on the issue of whether the circuit court clearly erred in finding that DHS proved a statutory ground by clear and convincing evidence.

As to the children's best interest, all three girls are adoptable, and their mother's instability and drug use presented potential harm to them if returned to Samantha's custody. Each of those factors did not have to be proved by clear and convincing evidence; those factors had to be considered, and they were. *See Rocha*, 2021 Ark. App. 454, 637 S.W.3d 299. The circuit court's overall best-interest determination is the statutory requirement that must be proved by clear and convincing evidence, and there could be no arguable merit to a challenge to the circuit court's best-interest finding in this case.

There were two adverse evidentiary rulings against Samantha, neither of which present a meritorious basis for reversal. We will not reverse a circuit court's ruling on admissibility of evidence absent a manifest abuse of discretion and a showing of resulting prejudice. *Rauls v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 366, 576 S.W.3d 59. One

objection was to a "leading" question posed by DHS to a witness, but that question was never answered and the follow-up question was directed to issues with the fathers involved in this case, not Samantha. So, no issue of arguable merit could be raised regarding this objection. The other objection was the court's sustaining of DHS's objection to a question that called for "speculation" by the witness about whether an assessment on Samantha had been done at a rehabilitation facility. The witness made clear she did not have the records to support that such an assessment had been done. The circuit court correctly ruled that the witness was being asked to speculate, so no evidentiary error resulted.

Having carefully examined the record and counsel's brief, we conclude that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit termination cases and that the appeal is wholly without merit. Accordingly, we grant counsel's motion to withdraw and affirm the order terminating Samantha's parental rights to her three children.

Affirmed; motion to withdraw granted.

ABRAMSON and VIRDEN, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.