Cite as 2026 Ark. App. 194

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-25-218

| | |
|---|---|
| JOSEPH HENRY IV<br><br>APPELLANT<br><br>V.<br><br>JILL PIERCE<br><br>APPELLEE | Opinion Delivered March 18, 2026<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FPR-20-432]<br><br>HONORABLE ANNIE POWELL HENDRICKS, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Appellant Joseph Henry IV seeks reversal of the order of the Sebastian County Circuit Court granting a contingency fee to the attorney of appellee, Jill Pierce, arguing that the fee agreement was erroneously entered into evidence. We affirm.

This case began as a probate matter. In August 2020, Jill Pierce filed a petition for appointment as administratrix of the estate of her late father, John Minnis. Henry, her brother, initially consented to her appointment, and Pierce was appointed administratrix in October 2020. No action was taken in the case, however, and the Sebastian County Circuit Court entered an order on February 22, 2024, closing the case.

On May 30, 2024, Henry petitioned to reopen the estate; for an accounting, inventory, and constructive trust; and to withdraw his consent to Pierce's appointment. In

his petition, he alleged that Pierce had insured real property belonging to the estate in her individual name and, after that property was destroyed in a fire, collected and retained the insurance proceeds. He asked the court to order an inventory and accounting from Pierce, the interpleader of any funds received by Pierce that belonged to the estate, a constructive trust over property and funds belonging to the estate, and for the court to hold a show-cause hearing for Pierce to explain why she should not be held in contempt.[1]

Meanwhile, in a filing under the same probate docket number, the Buckley Firm moved for attorney's fees relating to its representation of Pierce in the insurance case. This motion explained that Pierce had an insurance policy with State Farm Fire and Casualty Company that covered a house in Fort Smith. The house was damaged in two separate fires, and Pierce turned to State Farm for coverage. After State Farm "failed to compensate [Pierce] fully for the damages to [the] home," Pierce contracted with the Buckley Firm to pursue a claim against State Farm. The contract between Pierce and the Buckley Firm provided that Pierce would pay the law firm 33 1/3 percent of any sums collected if the matter did not proceed to litigation and 40 percent of all sums collected "in the event that this matter proceeds to filing a lawsuit." The Buckley Firm, on Pierce's behalf, eventually filed a breach-of-contract complaint against State Farm, and State Farm eventually paid $55,112.73 to settle

---

[1]The circuit court subsequently entered an order directing Pierce to account for all personal property and money that passed or should have passed through the estate; found her in contempt of court and ordered her jailed until such time as she appeared in court or accounted for the funds; and removed her as administratrix of the estate.

the litigation. Therefore, under the terms of the attorney-client contract with Pierce, the Buckley Firm sought payment of its attorney's fees in the amount of $22,045.09, representing 40 percent of Pierce's recovery against State Farm, plus costs.[2]

Henry responded to the Buckley Firm's motion for attorney's fees, stating that he did "not generally deny the statement of facts" in the firm's motion. He acknowledged that the Buckley Firm spent time and money to pursue the insurance claim and asserted that it should be awarded "a reasonable attorney's fee." Because the matter between Pierce and State Farm had settled, however, Henry argued that an appropriate fee would be "a quantum meruit fee based upon the time spent in resolving the case."

The circuit court held a hearing on the motion for attorney's fees in January 2025. Before calling witnesses, William Buckley of the Buckley Firm explained the history of the case to the court, noting that he had been contacted by Jill and Sam Pierce to represent them in an action against their insurance company. Jill Pierce was the named insured on the insurance policy, so he gave her his standard contract for this type of case and moved forward with his representation. Buckley explained that during the course of the case, he got a call from attorney Roy Gean, who represented the Minnis estate (which Buckley said he had not yet heard of at that point in the proceedings). Gean told Buckley "if you get money and you collect money on behalf or under this policy, hold onto it because I think there could be a

---

[2]The Buckley Firm's motion explained that it learned that the insured property was an asset of the Minnis estate only after it contracted with Pierce but before it disbursed any settlement funds.

problem." Buckley went on to work the case and eventually had to file a lawsuit because State Farm did not want to pay out under the policy. Buckley hired an expert, worked with State Farm's counsel, and ultimately reached a settlement. He agreed that he did not represent any party in the probate action but said that he simply "want[ed] to get paid for the work that I have performed. And I have a valid contract for that."[3]

Buckley then proceeded to call two witnesses to testify about the reasonableness of the fee his firm was seeking. The first was Sam Sexton, an attorney from Fort Smith. Presented with a copy of the contract between the Buckley Firm and Pierce, Sexton acknowledged it was a contingency-fee contract concerning a breach-of-contract action against State Farm. When Buckley moved to introduce the document, however, Henry objected on the grounds of hearsay and lack of authentication, noting that Pierce was not there to authenticate the document. Buckley responded that Sexton was testifying as an expert, and as such, the contract was not hearsay because it was the document on which he based his expert opinion. In addition, he stated that the contract was not hearsay because it had independent legal significance and was not being offered for the truth of the matter

_____

[3]Buckley also argued that Henry lacked standing to contest the contract between him (Buckley) and Pierce; however, the circuit court did not ultimately rule on the standing argument, and it is not an issue on appeal.

asserted. The court overruled Henry's objection, and the contract was admitted into evidence.[4]

Sexton went on to testify that the contingency-fee contract was "in accordance with the standards of Fort Smith for being reasonable." He said that he had used a similar contract since 2016 and that the fee percentages in the contract were the same as they had been since he started practicing law in 1987. He said it was "generally the rule" in suits against insurance companies that he would take one-third of the percentage recovered if a lawsuit were not filed and 40 percent if he had to file a lawsuit. Sexton also noted that he had previously been a law partner with Henry's attorney, and they charged similar percentages and used similar contracts when they worked together. Sexton concluded that in light of the work that the Buckley Firm performed in the case, there was no question that 40 percent was "a reasonable fee in the Fort Smith community."

Buckley also called Roy Gean, who had previously been the attorney for Pierce as administratrix of the estate. He recalled that Henry had called to inform him about the insurance claim "involving the home place." Once he learned about the case, he communicated with Buckley that it was not his "interest to interfere in the contract you had with Ms. Pierce. But I did educate you that the title to the property was in the name of the decedent, Mr. Minnis, and that we had a claim for those funds, but we did not want to alter

---

[4]Henry also objected to the introduction of the insurance policy on the same grounds––hearsay and authentication––and was again overruled, but that ruling is likewise not an issue on appeal.

the contract you [had] for the fee that you had with Ms. Pierce. And I told you very specifically that I am not trying to beat you out of a fee at all." Once Buckley reached a settlement with State Farm, Gean advised him to take his fee but leave the balance of the funds for the benefit of the estate.

After testimony concluded, Henry's attorney argued to the court that "the issue is not . . . [the] validity of the contract between Jill Pierce and the Buckley Firm. The issue is the reasonableness of the fee. So Mr. Henry's contest is the reasonableness." He said his position was not that Buckley was not entitled to a fee at all, but that he should perhaps get something on a quantum-meruit or hourly fee basis.

At the end of the hearing, the circuit court found that the attorney's-fee contract was valid, and the fee arrangement "is as old as time." Accordingly, the court approved the fees that Buckley sought. The court entered an order granting Buckley's motion for fees on January 21, 2025, finding that Buckley entered a legally binding and enforceable contract with Jill Pierce under which Pierce agreed that Buckley would receive 40 percent of the amount collected from State Farm. As such, the court awarded Buckley $22,045.09, plus costs.[5] Henry timely appealed and now argues that the circuit court erred in admitting the contingency-fee contract into evidence over his hearsay and authentication objections.

_____

[5]Buckley also sought and was awarded an additional $1500 in fees for prevailing against Henry in the underlying matter. Once more, however, this is not an issue on appeal.

Henry's sole argument on appeal is that the circuit court erred by admitting the attorney's-fee contract into evidence. We review a circuit court's decision to admit or exclude evidence for an abuse of discretion and will reverse only upon a showing of prejudice. *Keesee v. State*, 2022 Ark. 68, 641 S.W.3d 628; *Yafai Invs., Inc. v. Arkmo Foods, LLC*, 2021 Ark. App. 484.

On appeal, Henry maintains that the fee contract was hearsay, that it was not properly authenticated pursuant to Arkansas Rule of Evidence 901,[6] and that it therefore should not have been entered into evidence. In the absence of a properly admitted contract, he contends, the circuit court lacked the authority to award a contingency fee based on that document and should have awarded fees solely on a quantum meruit basis.

Even if the contract was admitted into evidence in error, however, we will nonetheless not reverse a circuit court's ruling on the admissibility of evidence absent a manifest abuse of discretion *and* a showing of prejudice. *Navrat v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 8, at 6. Without any showing of prejudice, any judicial error as to the admissibility of evidence is harmless error and cannot be grounds for disturbing a circuit court's order. *Barton v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 239, at 12, 576 S.W.3d 59, 67. When

---

[6]Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(b) provides illustrative "examples of authentication or identification conforming with the requirements of this rule," such as the testimony of a witness with knowledge that a matter is what it is claimed to be.

7

evidence is improperly admitted but the same evidence is admitted through another source, there is no reversible error. *Id.*

Thus, in order for this court to reverse on the basis of the allegedly improper admission of the contingency-fee contract, Henry must demonstrate that he was prejudiced by that admission. As noted above, Henry asserted at trial that "the issue is not . . . [the] validity of the contract between Jill Pierce and The Buckley Firm. The issue is the reasonableness of the fee. So Mr. Henry's contest is the reasonableness." The circuit court was presented a plethora of testimony about the reasonableness of a contingency fee in a case involving an insurance dispute such as the one Pierce retained the Buckley Firm to pursue. Sam Sexton testified that a 40 percent contingency fee had been the going rate since he began practicing in 1987 and even pointed out that he and Henry's attorney had practiced together and used similar contracts with similar percentages. He asserted that there was "no question" that a 40 percent contingency fee was a reasonable fee. Because there was an abundance of evidence regarding the *reasonableness* of the fee--which was the singular crux of Henry's argument--any purported error in the admission of the contract was harmless.

In his second argument on appeal, Henry argues that because the contract was not properly admitted, there was no evidence of the written agreement in violation of the Statute of Frauds. Henry never raised the issue of the Statute of Frauds before the circuit court; his argument is therefore not preserved for review, and we do not address it. *Townshend v. Townshend*, 2023 Ark. App. 532, at 12 ("In order to preserve an issue for appeal, the appellant

must specifically raise the argument relied on to the trial court, develop the argument there, and obtain a ruling on the argument.").

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Medlock & Gramlich, Attorneys at Law*, by: M. *Jereed Medlock*, for appellant.

*The Buckley Firm*, by: *William A. Buckley*, for appellee.