Cite as 2023 Ark. App. 46

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-22-480

| | |
|---|---|
| NICHOLAS MYERS AND MYRTLE MYERS | Opinion Delivered February 8, 2023 |
| APPELLANTS | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-20-766] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE DIANE WARREN, JUDGE |
| APPELLEES | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Nicholas Myers and Myrtle Myers appeal the May 23, 2022 order of the Washington County Circuit Court terminating their parental rights to their Minor Child (D/O/B October 29, 2020). Nicholas and Myrtle challenge all three statutory grounds relied on by the circuit court to terminate their parental rights. Myrtle additionally challenges the circuit court's finding that termination of her parental rights was in the best interest of the Minor Child. We affirm.

### I. *Facts and Procedural History*

This case began on December 10, 2020, when the Arkansas Department of Human Services ("DHS") responded to the Myerses' home to assess the Minor Child's safety following allegations of drug abuse by both parents; inadequate supervision of the Minor

Child; and abuse to Myrtle, a C5 quadriplegic, resulting in EMS services being called to assess her condition. Upon arriving, DHS became concerned that Nicholas was actively high due to his erratic behavior and the white foam building around his lips. DHS informed Nicholas that a drug screen would be required. Nicholas stated he and Myrtle had used methamphetamine two days prior, which Myrtle confirmed. DHS exercised a seventy-two-hour hold on the Minor Child and filed a petition for emergency custody, which was granted.

On January 4, 2021, a probable-cause order was entered continuing custody of the Minor Child with DHS. The circuit court found that DHS had made reasonable efforts to prevent the Minor Child's removal from the Myerses' home and ordered supervised visits at the DHS office twice a week for two hours each visit. The Minor Child was adjudicated dependent-neglected in an order filed February 9, 2021, as a result of parental neglect and inadequate supervision. On October 12, 2021, the first permanency-planning hearing was held. The circuit court continued a goal of reunification and a concurrent goal of adoption and noted Nicholas and Myrtle had recently acquired permanent housing. On January 24, 2022, a second permanency-planning hearing was held. The circuit court changed the goal of the case to adoption, finding Nicholas and Myrtle had not demonstrated stability or an ability to care for the Minor Child. On February 25, 2022, DHS filed a petition to terminate Nicholas's and Myrtle's parental rights citing grounds of twelve-month failure to remedy, subsequent factors, and aggravated circumstances—little likelihood; DHS also alleged that termination was in the best interest of the Minor Child.

At the termination hearing held on April 12, 2022, Nicole Netherton, the family service worker for this case, was the only witness called by DHS.[1] Ms. Netherton testified that the Minor Child had been taken into DHS custody due to the parents' illegal drug use. She testified the Minor Child is developmentally delayed and currently receiving occupational therapy, physical therapy, and speech therapy through his foster home. She testified that both Myrtle and Nicholas had maintained contact with DHS but were in minimal compliance with the case plan. She testified that neither parent had completed the drug-and-alcohol assessment or started counseling until March, a month before the termination hearing, and were not consistent in their visits with the Minor Child. She testified that during the visits the parents did attend, Myrtle was unable to hold the Minor Child for extended periods of time. Ms. Netherton testified that Nicholas was asked to come in for weekly drug screens but provided no reason for his nonparticipation, missing thirty-three out of forty-two screenings. Both parents were ordered to submit to a hair-follicle test, but neither completed this request due to Nicholas's inconsistencies with the screenings and the difficulty in obtaining regular urinalysis samples from Myrtle because she requires diapers. She testified that DHS provided three referrals to both Nicholas and Myrtle for the hair-follicle testing and offered transportation, but they declined. Ms. Netherton testified there was little likelihood that additional services to the Myers family would result in

---

[1]At the beginning of Ms. Netherton's testimony, DHS moved to admit the court report, a drug-screen log for Nicholas, a list of referrals made by DHS for the Myers family, the visitation log for Nicholas and Myrtle, and the psychological evaluations of Nicholas and Myrtle—all of which were admitted without objection.

successful reunification and recommended that the Minor Child stay in DHS custody and parental rights of Nicholas and Myrtle be terminated.

Next, Nicholas testified virtually from Omega Supervised Sanction Center ("Omega") in Malvern, Arkansas. Nicholas testified he had been incarcerated at Omega since March 23, 2022, due to going over his parole points following a DWI arrest on March 12, 2022, and he had an additional DWI arrest on February 5, 2022. Despite this, Nicholas testified that substance abuse had not been a problem for him throughout this case. In regard to the DWI, Nicholas testified that he did not abuse a substance because alcohol is legal. He testified that he declined transportation from DHS for the hair-follicle testing because he had his own transportation and was later unable to attend due to car trouble and limited funds for gas money. When presented with DHS's drug-screen log, Nicholas testified he attended all drug screens he was asked to participate in. He further testified he never received voicemails from DHS asking him to come in for drug screens. However, when Nicholas was asked why he did not appear on multiple dates on which the drug-screen log indicated he was a no show, Nicholas was unable to recall why he was not there or if he was contacted. The drug-screen log further showed Nicholas tested positive for opiates and THC on May 25, 2021. Nicholas testified that following the positive test result, he provided DHS with a picture of his prescription bottle for the opiates, and he accidentally inhaled the THC when he "hit [his] neighbor's vape pen thinking it was tobacco." Nicholas testified that Myrtle requires his assistance in her daily living, and while the couple has some help from family, the majority of the responsibility of caring for Myrtle falls to him. He testified he believes he and Myrtle

4

can safely parent the Minor Child if returned to their custody. However, Nicholas admitted that while he is aware of "some" of the Minor Child's special needs, he was not as knowledgeable as he should be.

Myrtle was the last to testify. She testified she failed to complete a hair-follicle test because she could not get transportation. Myrtle testified that Medicaid Transit would not take her because the hair-follicle test was not a medical appointment, and DHS informed her that it could not accommodate her wheelchair. However, Myrtle testified she was able to travel to the hearing that day in a regular van, and DHS could have taken her in its regular van as long as someone was there to transport her. She further testified she was unable to submit to the hair-follicle test on days transportation was not an issue due to occasional complications from dizzy spells in the morning as a result from not taking her medication on time. Like Nicholas, Myrtle testified that she did not agree drug-and-alcohol abuse had been an issue in this case. During questioning from the circuit court, Myrtle admitted she understood that the circuit court ordered a hair-follicle test in lieu of a regular urinalysis drug screen so Myrtle could avoid discomfort. She further admitted she understood the hair-follicle test would have satisfied DHS and the circuit court that there was not ongoing drug use. Myrtle testified that while Nicholas has been incarcerated, her grandmother had stayed overnight with her, and her family would assist her with the Minor Child until Nicholas was released.

On May 23, 2022, the circuit court entered an order granting DHS's petition to terminate Nicholas's and Myrtle's parental rights on all three grounds pled: failure to

remedy; subsequent factors; and aggravated circumstances—little likelihood. Further, the circuit court found termination of parental rights was in the Minor Child's best interest, specifically that the Minor Child is adoptable, and returning the Minor Child to the custody of Nicholas and Myrtle posed a risk of potential harm.

## II. Discussion

Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of a child. *Collier v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 100, 641 S.W.3d 67. We review termination-of-parental-rights cases de novo, but we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Isom v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 159. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, due deference is given to the circuit court's opportunity to judge the credibility of witnesses. *Gascot v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 57.

Nicholas and Myrtle both argue that the circuit court's order terminating their parental rights is based on unsupported evidence. The record in this case demonstrates several contradictions between the circuit court's findings and the evidence presented at the termination hearing. The circuit court incorrectly stated Nicholas and Myrtle had not completed a drug-and-alcohol assessment when, in fact, DHS's caseworker testified to the contrary. Further, the circuit court stated Ozark Guidance Center would not reschedule

6

Nicholas and Myrtle for drug-and-alcohol assessments after three missed appointments, but that information is not contained anywhere in the record. Similarly, the circuit court erred in stating Nicholas and Myrtle did not comply with *any* of the court orders or the case plan, as DHS's caseworker testified that Nicholas and Myrtle were in "minimal compliance." Evidence brought forth at the hearing also showed Nicholas and Myrtle had completed a psychological evaluation and participated in individual counseling, contrary to the circuit court's findings. Further, the circuit court erred in stating that Nicholas tested positive for cocaine, THC, and alcohol at the end of the case. The drug-screen log introduced by DHS shows this positive result occurred at the beginning of the case on January 12, 2021. Moreover, the circuit court's adjudication order states Myrtle, not Nicholas, tested positive for these substances on that date.

However, given those errors, we still affirm. This court can affirm the decision of the circuit court if the right result was reached, albeit for the wrong reason. *Bright v. Zega*, 358 Ark. 82, 186 S.W.3d 201 (2004). In determining whether the circuit court clearly erred in a finding, this court may look to the whole record to reach that decision. *Crawford v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 474, 588 S.W.3d 383. Indeed, de novo review of the evidence makes it incumbent on this court to review the entire record of the evidence presented to the circuit court. *Id.*

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the children. *Williams v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 162. The first step requires proof of one or more

7

statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood the child will be adopted and of the potential harm caused by returning custody to the parent. *Id.* A finding of both must be made to support a termination of parental rights; as such, a successful challenge of one step is sufficient for reversal. *Conn v. Ark. Dep't of Hum. Servs.*, 79 Ark. App. 195, 85 S.W.3d 558 (2002).

To prevail on the failure-to-remedy ground, DHS must demonstrate (1) the child was adjudicated dependent-neglected; (2) the child remained out of the custody of the parent for twelve months; (3) the parent failed to remedy the cause of the removal; and (4) this failure occurred despite meaningful efforts by DHS to rehabilitate the parent and correct the issue that caused the removal. Ark. Code Ann. § 9-27-341(b)(3)(B)(i) (Supp. 2021).

Likewise, to prevail on the subsequent-factors ground, DHS must demonstrate that factors arose subsequent to the filing of the original petition for dependency-neglect that demonstrate (1) placement of the child in the custody of the parent is contrary to the child's health, safety, or welfare; and (2) that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the child in the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*.

Finally, to prevail on the aggravated-circumstances–little-likelihood ground, DHS must demonstrate there was little likelihood appropriate reunification services to the family would result in successful reunification; however, "there must be more than a mere prediction or expectation on the part of the circuit court that reunification services will not

8

result in successful reunification. *See Yarborough v. Ark. Dep't of Hum. Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

## A. Nicholas's Appeal

### 1. *Failure to remedy*

Nicholas does not dispute the Minor Child was adjudicated dependent-neglected, that the Minor Child continued out of his custody for twelve months, or that DHS made meaningful efforts to provide services.[2] Rather, Nicholas argues the drug-screen log introduced by DHS was insufficient to support the statutory grounds employed to terminate his parental rights because DHS did not provide clear and convincing evidence that he failed to remedy the cause of the Minor Child's removal—his illegal drug use.

Nicholas missed thirty-three out of forty-two drug screens and provided no reason for not participating in the requested weekly drug screens. Due to Nicholas's inconsistencies with the drug screens, the circuit court ordered him to submit to a hair-follicle test, which he did not do. In the two months prior to the termination hearing, Nicholas was arrested for a DWI on two separate occasions, which lead to incarceration from a parole sanction. Finally, Nicholas testified that substance abuse was not an issue for him throughout this case and did not acknowledge any of his problems. A parent's failure to take responsibility for his or her actions supports a finding that the behavior that caused the removal has not been

---

[2]Nicholas does not challenge the circuit court's best-interest finding. Therefore, those findings are affirmed. *Debiasse v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 331, 651 S.W.3d 736.

remedied. *Ekberg v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 103, 513 S.W.3d 307. Considering these facts, in addition to the failed drug screenings evidenced by the drug-screen log, we hold that the circuit court did not clearly err in finding by clear and convincing evidence that the failure-to-remedy ground supported termination of Nicholas's parental rights.

### 2. *Subsequent factors*

Nicholas argues there is insufficient evidence to support termination under the subsequent-factors ground because (1) DHS did not prove it made reasonable efforts to offer adequate family services; (2) unsupported evidence formed the circuit court's determination that returning the Minor Child to Nicholas's custody would be contrary to the Minor Child's health, safety, or welfare; and (3) unsupported evidence formed the circuit court's determination that Nicholas was incapable or indifferent to remedying the subsequent issues that prevented the Minor Child from being placed in his custody. The circuit court found that DHS had made reasonable efforts to provide adequate services in a probable-cause order dated January 4, 2021; an agreed review order dated May 17, 2021; a permanency-planning order dated November 5, 2021; and a permanency-planning order dated April 4, 2022. Nicholas did not appeal from any of these orders nor did he raise this issue at the termination hearing; therefore, he has waived any services argument on appeal. *Del Grosso v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 305, 521 S.W.3d 519. DHS does not have an affirmative duty to reprove factual findings made by the circuit court in earlier orders. *Id.*

As for Nicholas's remaining arguments, there is sufficient evidence Nicholas disregarded the majority of the circuit court's orders and the case plan. At the beginning of this case, Nicholas was ordered to resolve all criminal charges and follow the terms of his probation. However, at the time the termination hearing took place, Nicholas was incarcerated with two pending DWI charges. He failed to demonstrate his sobriety by not completing a hair-follicle test and skipping nearly all of his weekly drug screens. Failure to submit to drug screens supports a grant of termination of parental rights under the subsequent-factors ground. *Furnish v. Ark. Dep't of Hum, Servs.*, 2017 Ark. App. 511, at 6, 529 S.W.3d 684, 688. These facts certainly demonstrate an indifference to remedy the issue that caused the Minor Child's removal and serve as a prime example of why returning the Minor Child to Nicholas's custody would be contrary to the Minor Child's health and safety. When a parent only partially complies with a case plan and continues to make decisions adverse to the child, reversal of a termination order is not justified. *Hollinger v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 458, 529 S.W.3d 242. Therefore, we hold that the circuit court did not clearly err in finding by clear and convincing evidence that the subsequent-factors ground supported termination of Nicholas's parental rights.

### 3. *Aggravated circumstances–little likelihood*

Nicholas argues there is insufficient evidence to support termination under the aggravated-circumstances—little-likelihood ground because the circuit court's findings under this factor were based on unsupported evidence. While we agree the circuit court's order is inconsistent with the evidence presented at the termination hearing, under a de novo review,

11

the entire record is open for our review. In reviewing the record, testimony of the DHS caseworker established that there was little likelihood additional services to the family would result in successful reunification. A caseworker's testimony that there are no further services that DHS can provide to reunify a parent with his or her child supports a finding of aggravated circumstances in a termination-of-parental-rights proceeding. *Lloyd v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 461, 655 S.W.3d 534.

Moreover, there was considerable testimony and other evidence that demonstrated Nicholas could not overcome his substance abuse and poor decision-making behavior in order to safely parent the Minor Child. In light of Nicholas's criminal misconduct for which he was incarcerated during the end of this case and despite the many referrals for services he received, the evidence supports the circuit court's finding that there is little likelihood services would result in successful reunification. A parent's past behavior is often a good indicator of future behavior. *Gibby v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 145, 643 S.W.3d 479. Therefore, we hold that the circuit court did not err in finding that the aggravated-circumstances–little-likelihood ground supported termination of Nicholas's parental rights.

Accordingly, we affirm the order terminating Nicholas's parental rights to the Minor Child.

## B. Myrtle's Appeal

### 1. *Statutory grounds*

## a. Failure to remedy

Myrtle does not dispute that the Minor Child was adjudicated dependent-neglected or that he continued out of her custody for twelve months. Rather, Myrtle argues there was insufficient evidence to support termination of her parental rights because DHS did not provide clear and convincing evidence that she failed to remedy her illegal drug use or her inability to care for the Minor Child. Myrtle additionally argues DHS failed to prove it made reasonable efforts to provide adequate services to the family. The circuit court found that DHS had made reasonable efforts to provide adequate services in a probable-cause order dated January 4, 2021; an agreed review order dated May 17, 2021; a permanency-planning order dated November 5, 2021; and a permanency-planning order dated April 4, 2022. Like Nicholas, Myrtle did not appeal from any of these orders nor did she raise this issue at the termination hearing; therefore, she has waived any services argument on appeal. *Del Grosso*, 2017 Ark. App. 305, 521 S.W.3d 519. DHS does not have an affirmative duty to reprove factual findings made by the circuit court in earlier orders. *Id.*

Clear and convincing evidence of Myrtle's failure to remedy included testimony at the hearing that established Myrtle relied on Nicholas, who continued to use methamphetamine, throughout this case. Following Nicholas's incarceration, Myrtle was unable to provide any evidence, other than her own testimony, that she had a plan for the Minor Child's care if returned to her. Testimony further established that Myrtle cannot hold the Minor Child for extended periods of time, further evidencing her inability to care for the Minor Child on her own. When it came to her own issues with substance abuse, Myrtle

testified that she did not believe drugs and alcohol had been an ongoing issue for her in this case. However, she failed to comply with the one court order that would assure both DHS and the circuit court that she had remedied her drug use. A parent's failure to take responsibility for his or her actions supports a finding that the behavior that caused the removal has not been remedied. *Ekberg*, 2017 Ark. App. 103, 513 S.W.3d 307. Therefore, we hold that the circuit court did not clearly err in finding the failure-to-remedy ground supported termination of Myrtle's parental rights.

### b. Subsequent factors

Myrtle argues there was insufficient evidence to terminate her parental rights under the subsequent-factors ground because DHS failed to provide clear and convincing evidence that Myrtle continued to use drugs or why the Minor Child could not be returned to her care while she was assisted by a relative. We disagree. Myrtle's inaction throughout this case undermines her arguments on appeal. As the facts have already established, Myrtle was ordered at the beginning of this case to complete a myriad of tasks, which she either never did or waited until the month prior to the termination hearing to begin. Partial compliance with a case plan does not justify reversal of a termination order if the parent continues to make decisions adverse to the child. *Hollinger*, 2017 Ark. App. 458, 529 S.W.3d 242. Therefore, we hold that the circuit court did not clearly err in finding the subsequent-factors ground supported termination of Myrtle's parental rights.

### c. Aggravated circumstances—little likelihood

14

Myrtle argues there is insufficient evidence to support termination under the aggravated-circumstances–little-likelihood ground because the circuit court's findings under this factor were based on unsupported evidence, and it was purely speculative that further services would not result in successful reunification. We agree that the circuit court's order is inconsistent with the evidence presented at the termination hearing; however, under a de novo review, the entire record is open for our review. In reviewing the record, testimony of the DHS caseworker established there was little likelihood additional services to the family would result in successful reunification. A caseworker's testimony that there are no further services DHS can provide to reunify a parent with his or her child supports a finding of aggravated circumstances in a termination-of-parental-rights proceeding. *Lloyd*, 2022 Ark. App. 461, 655 S.W.3d 534.

Moreover, the evidence established that Myrtle received multiple referrals for services at the beginning of this case and had just recently started participating in a small portion of those services. The circuit court is not required to credit Myrtle's eleventh-hour efforts, and they will not be held to outweigh evidence of her prior noncompliance. *Arnold v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 300, 578 S.W.3d 329. What matters is whether completion of the case plan achieved the intended result of making a parent capable of caring for the child; mere compliance with the orders of the court and DHS is not sufficient if the root of the parent's deficiencies are not remedied. *Id.* Myrtle's minimal compliance with the case plan did not remedy her inability to safely parent the Minor Child. Therefore, we hold that

15

the circuit court did not clearly err in finding the aggravated-circumstances–little-likelihood ground supported termination of Myrtle's parental rights.

## 2. *Best Interest*

In making a best-interest determination, the circuit court is required to consider the likelihood of adoptability and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Not every best-interest factor must be established by clear and convincing evidence; rather, after consideration of all factors, the evidence must clearly and convincingly show that termination is in a child's best interest. *Renfro v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 419, 385 S.W.3d 28. Further, the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Ross v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 503, 529 S.W.3d 692. Potential harm must be viewed in broad terms and a forward looking manner. Id.

Myrtle does not challenge the circuit court's findings regarding adoptability. Therefore, we need not consider that issue. *Easter v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 411, 587 S.W.3d 604. Rather, Myrtle argues that the circuit court's findings regarding her sobriety and lack of participation in services was based on unsupported evidence and thus failed to establish she posed a risk of potential harm warranting termination of her parental rights to the Minor Child. Like with Myrtle's statutory arguments, we agree that the circuit court's order is inconsistent with the evidence presented at the termination hearing; however, under a de novo review, the entire record is open for our review. In reviewing the

16

record, the testimony established that the circuit court had ample evidence of potential harm to support its best-interest finding. In deciding whether to terminate parental rights, the circuit court has a duty to look at the case as a whole and how the parent has discharged her parental duties, the substantial risk of serious harm the parent imposes, and whether the parent is unfit. *In re Adoption of K.M.C.*, 62 Ark. App. 95, 969 S.W.2d 197 (1998).

As set forth above, this case began after it was discovered Myrtle and Nicholas had been using methamphetamine while caring for the Minor Child. Prior to the Minor Child's removal, evidence demonstrated Myrtle's resistance to allow anyone but Nicholas to assist her in caring for the Minor Child, despite the fact that he neglected them both on numerous occasions. This court has repeatedly held that a parent's past behavior is an indicator of likely potential harm should the child be returned to the parent's care and custody. *Yelvington v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 337, 580 S.W.3d 874. Further, Myrtle demonstrated a lackadaisical approach to following court orders, which itself is sufficient evidence of potential harm. *See Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915. Myrtle's failure to make measurable and sustainable progress toward alleviating the cause of the Minor Child's removal demonstrates she remains a risk of potential harm to the Minor Child. Because we are not left with a definite and firm conviction that a mistake has been made, we hold that the circuit court did not clearly err in finding that termination was in the Minor Child's best interest. Accordingly, we affirm the order terminating Myrtle's parental rights.

Affirmed.

KLAPPENBACH and MURPHY, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for separate appellant Nicholas Myers.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for separate appellant Myrtle Myers.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.