Cite as 2025 Ark. App. 175

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-24-733

| | | |
|---|---|---|
| JOSEPH MILLICAN | | Opinion Delivered March 19, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. 14JV-23-44] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | HONORABLE DAVID W. TALLEY, JR., JUDGE |
| | APPELLEES | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Joseph Millican appeals from the August 21, 2024 order of the Columbia County Circuit Court terminating his parental rights to his child, MC. Millican argues that the circuit court committed reversible error by basing the termination decision in its written order on statutory grounds not pled in the termination petition. He also challenges the sufficiency of the evidence supporting both the statutory grounds that were pled in the termination petition and the best-interest finding that MC would be at a risk of harm if returned to his custody. We affirm.

I. *Facts and Procedural History*

On March 14, 2023, the Arkansas Department of Human Services ("ADHS") filed a petition for ex parte emergency custody and dependency-neglect in Columbia County after exercising a hold on MC. In the affidavit attached to the petition, Destini Montgomery, an

ADHS family service worker, stated that ADHS initiated the hold due to concerns about the mental health of Cassidy Lowe, MC's mother. During a March 9 visit to the home, Lowe appeared erratic—potentially under the influence or unstable due to mental illness, and the home was not appropriate and did not have food or working utilities. As a result, local law enforcement was called to assist. Millican, MC's putative father, arrived and informed Ms. Montgomery that Lowe was "crazy" and that he was in the process of moving from their home. Both parents refused to submit to a drug screen. The resulting hold on MC was exercised on March 9 and was based on parental unfitness—specifically concerns about Lowe's mental state, possible drug use, and ability to care for MC. An ex parte order placing MC in ADHS's legal custody was filed on March 14.

A probable-cause hearing was held on March 17, at which time the circuit court continued MC's custody with ADHS. The adjudication hearing was held on April 21, and the circuit court found MC dependent-neglected based on environmental neglect and parental unfitness. Specifically, the circuit court found the concerns about Lowe's ability to care for MC, the condition of the home, and Lowe's drug use and mental-health issues to be true. The circuit court also found that domestic violence between Lowe and Millican put MC at risk and that their presentation at visitation was cause for concern. The circuit court ordered that MC would remain in the custody of ADHS and set the goal of the case as reunification with a concurrent goal of adoption and relative placement. Millican was ordered to follow the case plan and court orders; obtain and maintain stable, clean, adequate, and suitable housing; obtain and maintain stable employment; complete parenting classes;

submit to random drug screens and test negative; complete a substance-abuse assessment and follow the recommendations; not associate with anyone using controlled substances; attend and participate in individual counseling to include domestic-violence counseling; and undergo a psychological evaluation. Also on April 21, the circuit court entered an order for Millican to submit to a hair-strand drug screen no later than May 5.

On July 7, 2023, the circuit court held a review hearing. At this hearing, the circuit court ordered that the case plan goal remain reunification with concurrent goals of adoption and relative placement and that MC remain in the custody of ADHS. The circuit court also found that Millican had not complied with the case plan and court orders and had not demonstrated progress towards the goal of the case plan. The circuit court continued the previous orders for Millican to follow.

On August 4, 2023, the circuit court held another review hearing in which it continued the goal of reunification with concurrent goals of adoption and relative placement. Millican was again found to be noncompliant with the case plan and court orders, and the circuit court continued prior orders. The circuit court additionally ordered Millican to report to ADHS's office for his visits by noon or ADHS would not have to produce MC for visits.

On October 6, 2023, the circuit court held a third review hearing in which it continued the goal of reunification with concurrent goals of adoption and relative placement. The circuit court continued all prior orders and findings, including that Millican was not in compliance with the case plan or court orders and had not made progress toward

the goal of the case plan. Millican was ordered to complete a hair-follicle and a DNA test by October 10. Additionally, the circuit court found Millican in contempt for not appearing at ADHS for the hearing, but it reserved sanctions.

On October 3, ADHS filed a termination-of-parental-rights ("TPR") petition, and the TPR hearing was set for December 1. However, on December 1, the circuit court instead held another review hearing. MC remained in the custody of ADHS, and the goal remained reunification with concurrent goals of adoption and relative placement. The circuit court again ordered Millican to arrive at ADHS by noon for his visits or ADHS did not have to produce MC for visits. Additionally, the circuit court found that Millican had not complied with the case plan and had not demonstrated progress toward the goal of the case and continued its prior orders. Further, the circuit court found Millican to be MC's parent as a result of the genetic-testing results that were introduced at the hearing.

A permanency-planning hearing was held on March 1, 2024. At this hearing, the circuit court changed the goal to authorize a plan to return MC to Lowe but also ordered that MC remain in ADHS's custody with concurrent goals of adoption and guardianship. The circuit court found that Millican had not made significant and measurable progress and was not diligently working toward reunification and relieved ADHS of providing services to him. Specifically, the court found that Millican had not maintained contact with ADHS, participated in the case plan, or followed the orders of the court.

ADHS filed a second TPR petition on April 25. As to Millican, the statutory grounds pled were subsequent factors and aggravated circumstances—specifically, that there was little

4

likelihood that continued services would result in reunification. The TPR hearing was set for June 7. An order entered on June 19 continued the TPR hearing to June 21, but instead, a fifteen-month review and permanency-planning hearing was held. MC remained in the custody of ADHS, and the goal was changed to adoption because of the court's finding that the parents had not complied with the case plan and court orders. Both Millican and Lowe were found to be noncompliant with the case plan and court orders. Additionally, the circuit court found that Millican had testified that he now had a home appropriate for MC since "riff-raff" had moved out, and he also admitted that the previous people living with him were abusing drugs, including the person he had proposed would be MC's babysitter.

The TPR hearing was scheduled for July 19, and on July 18, Lowe filed a consent to her TPR. At the TPR hearing, the first witness was Roquayyah Blake, an ADHS family service worker assigned to the case. Ms. Blake testified that there were no barriers to MC being adopted and that a data match came back with 205 potential families who would adopt a child with MC's characteristics. She noted that although Millican had completed services, she did not believe he did so in a timely manner. She confirmed that Millican had a home but stated that at one point, she had been concerned about other people living there.

Ms. Blake testified that she last visited Millican's home in November or December 2023. She stated that she did not feel the home was appropriate at that time because Millican's cousin was living there, and a motorcycle was in the living room. However, Ms. Blake acknowledged that she did not know the current state of Millican's home. She expressed that it had been difficult to obtain random drug screens from Millican, and in

October 2023, his hair-follicle test was positive for amphetamine, methamphetamine, and THC. She confirmed that after the hair-follicle test, Millican submitted to a drug-and-alcohol assessment and completed the recommended outpatient treatment.

Ms. Blake testified that Millican reported that he was employed, but she had not seen any documentation verifying his employment. She explained that Millican visited MC every week for four hours. She stated that Millican was consistent in his attendance at the visits and that the interactions with MC were good. Ms. Blake confirmed that Millican completed an online domestic-violence class. She testified that Millican had not provided her with a plan for MC's childcare while he was working and noted that the individual he had suggested has a history with ADHS.

Ms. Blake further testified that Millican and Lowe were still married, and there had been times that law enforcement was called to the home because Lowe had violated a no-contact order and that Millican had banned Lowe from his home.

Ms. Blake testified that at the previous hearing, Lowe had stated that it was her opinion that Millican's home was not stable and that it was not best for MC to be placed in his care. She acknowledged that Millican had shown her the lease for his current home and noted that she was not aware that a complaint for eviction was filed against Millican in August 2023, before he moved into his current home. Ms. Blake expressed concern that if MC was placed with Millican, Lowe would be allowed to be with MC unsupervised. Ms. Blake testified that Millican had missed two visits and that he had left early from two other visits.

6

Ms. Blake ultimately recommended that Millican's parental rights be terminated, despite acknowledging that he completed most of what had been asked of him, although it was late into the case. She pointed out that he had not completed individual counseling, and that he told her that he was going to divorce Lowe.

Millican was the next witness. He testified that he had completed what was needed for MC to be placed in his care. He stated that no one else currently lived in his home. Millican acknowledged that Lowe had been there a month and a half prior, which is when the police had been called. He noted that before that incident, Lowe would show up often, and sometimes he would let her in depending on how she was acting. Millican denied ever harming or threatening to harm Lowe and did not know why she would claim he had done so. Millican testified that the day MC was placed in ADHS's care, Lowe had just come home from the psychiatric ward. He explained that she stopped taking her medications when she was pregnant with MC and never resumed taking them after MC was born. Millican testified that he was willing to submit to random drug screens but that he would not be home if ADHS came while he was at work, which he stated had often happened during the case. He acknowledged that the hair-follicle test in 2023 was positive for amphetamine, methamphetamine, and marijuana. Millican stated that all he used prior to that test was Adderall and marijuana. He conceded that he did not have a prescription for the Adderall. Millican also stated that other than his cousin, no one else had lived with him and that the motorcycle was no longer inside the home. Millican testified that he believed MC had been taken into foster care due to Lowe's actions.

Millican testified that he last used marijuana the day before the TPR hearing and that he was in the process of obtaining his medical marijuana card. He testified that he last used Adderall a few months before the TPR hearing. He acknowledged that he obtained the Adderall from his nephew's prescription. He noted that the marijuana had come from a dispensary in California. Millican wanted his sister and brother-in-law to be considered for placement until he was able to have MC placed back in his care.

John Colvin, MC's foster parent, was the last witness. Colvin testified that MC was doing well in his home and was attending school. He expressed that MC was welcome to stay in his home until a permanent placement was found. He noted some behavioral issues in the past but explained that those had greatly improved.

After the testimony concluded, the circuit court ruled that it was granting ADHS's TPR petition:

> All the testimony having been received, The Court finds that the juvenile has been adjudicated Dependent/Neglect, has continued to be out of the custody of the parents for more than twelve months and despite a meaningful effort by the Department to rehabilitate the parents and correct the conditions which caused removal, those conditions have not been remedied.
>
> . . . .
>
> The Court made a judicial determination at the time of permanency planning that there was little likelihood that continued services would result in successful reunification. Based on testimony from today, that Court determination has been reinforced, and I reassert that determination about little likelihood that services would result in successful reunification; That that constitutes an aggravated circumstance for purposes of consideration of this Petition.

8

The August 21 order reflecting the ruling contained a single finding regarding the required statutory ground supporting TPR:

> 6. Regarding Colin Millican, the juvenile has been adjudicated by the court to be dependent-neglected and have continued out of the home for twelve months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent (*See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)).

Regarding the best-interest analysis, the circuit court made the following comment at the end of the TPR hearing:

> The testimony is that there are no barriers to prevent a successful adoption for [MC]. 205 data matches is significant. During the course of this case and today, The Court is not aware of any physical, mental or emotional issues that would stand in the way of a successful adoption and that therefore, the Petition for Termination as to both parents is granted.
>
> . . . .
>
> And since Mr. Millican is still illegally using controlled substances, then obviously The Court cannot place the child with him today. And that because Mr. Millican, I believe, still has an unreasonable expectation about what would be safe as far as caregivers for his child and because of the illegal drug use, that The Court finds that it would not be a safe placement for [MC].

The TPR order specifically states the following in paragraph 15:

> The Court finds by clear & convincing evidence that the parental rights of Cassidy Lowe and Joseph Millican should be terminated. The Court finds that it is in the child's best interest that parental rights be terminated. The Court finds that the child would clearly be harmed if returned to the custody of Cassidy Lowe and Joseph Millican. The Court finds that [MC] is clearly adoptable and that it is in his best interest for parental rights to be terminated.

Millican filed a timely notice of appeal on August 23, and this appeal followed.

## II. *Standard of Review and Applicable Law*

9

In *Barnoskie v. Arkansas Department of Human Services*, 2024 Ark. App. 324, at 4–5, 690 S.W.3d 128, 131, we reiterated our standard of review and two-part analysis in TPR cases:

> This court reviews termination-of-parental-rights cases de novo. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.

> To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. The circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exist. Proof of only one statutory ground is sufficient to terminate parental rights. Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.

(Internal citations omitted.)

### III. *Discussion*

A. Inconsistency Between Statutory Grounds in Order and Petition

The TPR order entered by the circuit court relied on the following statutory ground:

That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2023). However, ADHS pled two different grounds against Millican in the TPR petition:

That other factors or issues arose subsequent to the filing of the original petition . . . that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues . . . .

Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*; and

The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to have subjected any juvenile to aggravated circumstances. Aggravated circumstances means: A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification.

Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*.

Millican asserts that although the circuit court's oral statements at the conclusion of the TPR hearing indicated that that TPR was proper under both the subsequent-factors and aggravated-circumstances grounds, those oral rulings cannot be relied on for the ultimate findings because they were not reduced to writing in the final TPR order. The written order is the only order given effect, regardless of what the circuit court may have stated from the bench at the close of trial. *See Exigence, LLC v. Baylark*, 2010 Ark. 306, 367 S.W.3d 550 (holding that oral order not effective until entered of record); *Verbitski v. Union Pac. R.R. Co.*,

2011 Ark. App. 6, 380 S.W.3d 459 (rejecting argument that oral order is a valid substitution for an entered order). Millican urges that because the findings related to the statutory grounds in the TPR order are inconsistent with what was pled by ADHS, the TPR decision must be reversed.

We disagree. Our de novo standard opens the entire record for review and does not constrain the appellate court to the circuit court's rationale, allowing for review of the record for additional reasons to affirm. *See Kazzee v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 78, at 11, 684 S.W.3d 279, 287. This court may hold that grounds for TPR were proved, even if not specifically stated in the circuit court's order. *See id.* We may affirm the circuit court's TPR if the ground was alleged in the TPR petition, and the ground was proved at the TPR hearing. *Id.* at 11, 684 S.W.3d at 287–88.

Here, according to the written order, the circuit court simply failed to rule on the grounds pled in the TPR petition, making it similar to *Brumley v. Arkansas Department of Human Services*, 2015 Ark. 356, in which the Arkansas Supreme Court affirmed a TPR on the pled incarceration ground despite the written order addressing only the failure-to-remedy and subsequent-factors grounds. *Brumley*, 2015 Ark. 356, at 8–9. *See also Barnoskie*, 2024 Ark. App. 324, at 6, 690 S.W.3d at 132 (rejecting the argument for reversal where none of the grounds relied on were pled because a de novo review allows the appellate court to address other grounds alleged in the petition). It is well established that this court may affirm a circuit court's decision when it has reached the right result, although it may have announced a different reason. *Brumley*, 2015 Ark. 356, at 9. As detailed below, our de novo review of the

12

record with respect to the statutory grounds supporting TPR resolve any inconsistencies between the grounds pled in the TPR petition and the one specifically set forth in the final TPR order. Accordingly, we reject Millican's argument for reversal on this point.

B. Sufficiency of the Evidence Regarding Statutory Grounds Pled in the TPR Petition

Millican alternatively challenges the evidence supporting the subsequent-factors and aggravated-circumstances grounds that were pled in the TPR petition. We hold there was sufficient evidence to support TPR on both grounds, only one of which is necessary for this court to affirm the TPR. *E.g.*, *Boomhower v. Ark. Dep't of Hum Servs.*, 2019 Ark. App. 397, at 7, 587 S.W.3d 231, 235.

We have held that a parent's lack of compliance with the case plan and court orders, including failure to submit to drug screens and testing positive for drugs, supports termination of parental rights under the subsequent-factors ground. *Furnish v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 511, at 6, 529 S.W.3d 684, 688. And under the aggravated-circumstances ground, a circuit court may terminate parental rights under this ground if there is little likelihood that further services will result in a successful reunification. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)–(B)(i)*.

Here, MC was removed from Lowe's custody on March 9, 2023—although she and Millican were living together at the time—and adjudicated dependent-neglected on grounds of neglect and parental unfitness. Following the filing of the original TPR petition, the circuit court ordered Millican to obtain and maintain stable, clean, adequate, and suitable housing; to obtain and maintain stable employment; to complete parenting classes; to submit to

13

random drug screens and test negative; to complete a substance-abuse assessment and follow the recommendations; to not associate with anyone using controlled substances; to attend and participate in individual counseling, including violence counseling; to undergo a psychological evaluation; to submit to genetic testing; and to complete a hair-follicle test. ADHS made reasonable efforts by offering services such as psychological evaluations; substance-abuse assessment; drug screens; visitation; parenting classes; transportation assistance; foster-care placement; referrals for services; and case management. Millican did not appeal any of these reasonable-efforts findings.

Despite the services provided, Millican demonstrated an indifference to complying with the court's orders for many months. *Myers v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 46, at 14, 660 S.W.3d 357, 368 (affirming subsequent-factors ground where the mother was ordered to complete a myriad of tasks at the beginning of the case and waited until the month before the TPR hearing to begin). On October 6, 2023, the circuit court found Millican in contempt for failing to appear at ADHS for the hearing. Millican was never found compliant with or progressing with the case plan or court orders, and Ms. Blake testified that she had only received notice that he had completed domestic-violence counseling the day before the fifteen-month review hearing. *See Myers*, 2023 Ark. App. 46, at 15, 660 S.W.3d at 368 (holding that the circuit court is not required to credit eleventh-hour efforts, and they will not be held to outweigh evidence of prior noncompliance).

In addition to compliance issues, since MC's initial removal, there have been drug-abuse concerns regarding Millican, not just Lowe. Specifically, Millican admitted smoking

14

marijuana the day before the TPR hearing without having a medical marijuana card or having obtained the drug from a valid dispensary. *See Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, at 5, 585 S.W.3d 725, 728–29 (holding continued drug use supported TPR under aggravated-circumstances ground). Millican's explanation as to how he obtained the marijuana and unprescribed Adderall was not clear, and despite testing positive for methamphetamine on a hair-follicle test, Millican denied using and maintained that he had not used methamphetamine in years. *See Myers*, 2023 Ark. App. 46, at 9, 660 S.W.3d at 366 (holding a parent's failure to take responsibility for his or her actions supports a finding that the behavior has not been remedied). The record before us supports that the circuit court was not convinced by Millican's testimony and found him noncompliant with the drug screens that could have proved whether he stopped using drugs. *See Furnish*, *supra*.

There is also evidence before us related to ADHS's concerns about Millican's unsafe decision making regarding who would provide care for MC and who he allows in his home. Millican had nominated an individual who was the subject of her own active dependency-neglect case dealing with substance-abuse concerns as a babysitter for MC if he were placed in Millican's custody. Millican also allowed Lowe in his home on various occasions because they are still married, despite his concern about her providing care for MC. And despite his argument that he attended visitation with MC, it was reported that he fell asleep frequently and left early because he needed to get back to work. The evidence presented poses serious questions concerning whether he could provide the care needed for MC if returned to him.

15

Nevertheless, Millican argues that the circuit court erred in granting TPR under either ground because he had completed nearly everything he was asked to complete. This court has consistently held that even full compliance is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *See, e.g., Cobb v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, at 6, 512 S.W.3d 694, 697. We hold that sufficient proof supports the termination of Millican's parental rights on the statutory grounds pled in the TPR petition, and any remaining arguments about his noncompliance are just requests to reweigh the evidence on appeal. *See Boomhower*, 2019 Ark. App. 397, at 8, 587 S.W.3d at 236.

## C. Best-Interest Analysis

Despite Millican's challenge to the circuit court's singular statement in the TPR order that "the child would clearly be harmed if returned to the custody of Cassidy Lowe and Joseph Millican," we hold that sufficient evidence supports the circuit court's best-interest finding. A circuit court determines whether termination is in a juvenile's best interest by considering the likelihood that the juvenile will be adopted and the potential harm to the juvenile if there is continued contact with the parent. *E.g., McNeer v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 512, at 5, 529 S.W.3d 269, 272. These two factors are not essential elements of proof in a termination case; thus, neither factor need be established by clear and convincing evidence. *Id.* at 6–7, 529 S.W.3d at 272–73. Millican fails to challenge the circuit court's findings regarding adoptability; accordingly, we need not address this finding. *See, e.g., Easter v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 441, at 8, 587 S.W.3d 604, 609.

Millican does, however, challenge the potential-harm factor. The Juvenile Code requires the circuit court to find that the child would be subject to potential harm caused by "returning the child to the custody of the parent . . . ." Ark. Code Ann. § 9-27-341(b)(3)(A)(ii). Potential harm must be viewed in a forward-looking manner and considered in broad terms, and the court may consider past behavior as a predictor of future behavior. *Cummings v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 466, at 8, 636 S.W.3d 830, 835. The circuit court does not have to find that actual harm would occur, nor does it have to affirmatively identify a potential harm. *Phillips v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 169, at 6, 596 S.W.3d 91, 96.

Here, Ms. Blake testified that Millican did not make MC a priority during the case. *See Myers*, 2023 Ark. App. 46, at 17, 660 S.W.3d at 369 (holding parent's lackadaisical approach to following court orders was sufficient evidence of potential harm). Millican's choice for MC's babysitter had her own history with ADHS, and his roommates during the case were using illegal substances. A parent's inability to demonstrate appropriate parenting and decision-making skills can support a potential-harm finding. *E.g., Martinez v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 484, at 8–9, 611 S.W.3d 225, 229–30. Moreover, Millican tested positive for methamphetamine, amphetamine, and THC and failed to comply with drug screening in order to demonstrate to the circuit court that the substance-abuse issue had been resolved. Instead, he admitted using THC without a medical marijuana card and using Adderall without a prescription.

Finally, Millican argues that because no evidence was presented to indicate that he and MC lacked a bond, the severance of their bond would not be in MC's best interest. This conclusory statement, even if presumed true, is insufficient to warrant reversal in light of the record before us. *See, e.g.*, *Lemon v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 253 (holding that existence of a bond between biological parent and child may not be sufficient to prevent TPR when weighed against other facts).

After a de novo review of the record and consideration of Millican's arguments, we are not left with a definite and firm conviction that a mistake has been made. Therefore, we affirm the order terminating his parental rights to MC.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.