Cite as 2026 Ark. App. 127

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-25-621

| | |
|---|---|
| JASMINE KNOTTS | Opinion Delivered February 25, 2026 |
| APPELLANT | |
| | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT |
| V. | [NO. 26JV-24-86] |
| | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE LYNN WILLIAMS, JUDGE |
| APPELLEES | AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

Jasmine Knotts appeals from the July 8, 2025 Garland County Circuit Court order terminating her parental rights to her four minor children.[1] On appeal, Knotts argues that the Arkansas Department of Human Services ("DHS") failed to prove the minor children had been removed from her care for twelve months. We find no error and affirm.

### I. *Relevant Facts*

On March 26, 2024, DHS filed a petition for ex parte emergency custody and dependency-neglect after exercising a seventy-two-hour hold on Knotts's four minor children: MC1 and MC2, age four; MC3, age two; and MC4, age six months. The affidavit attached

---

[1]MC1 and MC2 were born on 11/05/19, MC3 was born 03/07/22, and MC4 was born 10/02/23.

to the petition stated MC4 was transported to the hospital and found to have a blood-alcohol concentration of 0.429. Later that day, Knotts tested positive for methamphetamine, amphetamines, and marijuana. Knotts was unable to explain how MC4 ingested alcohol. Although Knotts suggested the ingestion occurred while the child was with a babysitter, the treating physician reported this explanation was inconsistent with the onset of MC4's symptoms. MC4 was airlifted to Arkansas Children's Hospital and admitted to the intensive care unit. The circuit court entered an ex parte order placing the children in DHS custody that same day.

On March 27, 2024, a probable-cause hearing was held. The circuit court found probable cause to continue custody with DHS and set the matter for adjudication. On May 29, an agreed adjudication order was entered in which Knotts stipulated the children were dependent-neglected due to parental unfitness resulting from her substance abuse. The court set the goal of the case as reunification with a concurrent goal of relative placement.

Agreed review orders were entered on September 10 and December 13, 2024. In both orders, the circuit court found the children should remain in DHS custody and that Knotts was in partial compliance with the case plan. The goals of reunification and concurrent relative placement remained unchanged. Knotts was ordered to comply with the case plan, submit to random drug screens, remain drug-free, maintain adequate income, and cooperate with DHS. A no-contact order entered in Knotts's criminal case prevented visitation with the children.

On March 12, 2025, a permanency-planning hearing was held. The circuit court changed the goal of the case to adoption and found that Knotts was not in compliance with the case plan and had failed to make measurable progress toward reunification.

On May 20, 2025, DHS filed a petition to terminate Knotts's parental rights alleging she failed to remedy the conditions that caused the children's removal.

On June 25, 2025, the termination hearing was held. DHS called Cecily Truslow, the family service worker assigned to the case. Truslow testified that DHS offered Knotts services including a drug-and-alcohol assessment, cash assistance, transportation, home visits, counseling, and outpatient substance-abuse treatment. However, Truslow testified the only service Knotts completed was the drug-and-alcohol assessment. From November 2024 through June 2025, DHS had no contact with Knotts despite attempts to reach her by phone, text message, email, and home visits. Truslow testified that Knotts was incarcerated when she made contact with her in June 2025. Truslow further testified that Knotts tested positive for methamphetamine on June 4, 2025, just two days after being released from jail. Truslow stated she believed termination of Knotts's parental rights was in the children's best interest. Notably, during Truslow's testimony, she was asked if the children were removed in August 2024, to which she responded, "Yes." As discussed below, this line of questioning caused issue at the end of the termination proceeding.

Next, DHS called Susan Miller, an adoption specialist. Miller testified that she conducted a data match on the children as a sibling group and identified three potential adoptive homes. When the children were considered in two sibling groups, the number of

3

potential placements increased. Miller testified that there were 79 potential adoptive homes for MC1 and MC2 and 118 potential adoptive homes for MC3 and MC4.

Knotts did not testify and presented no witnesses. Knotts argued that DHS had not met its burden in proving she failed to remedy the conditions that caused removal. Knotts specifically argued that no evidence had been presented that the minor children had been out of her custody for twelve months or more, pointing to the following testimony:

[DHS COUNSEL]:     And what was the reason for the removal?

[TRUSLOW]:     [MC4], the youngest, was brought to the [emergency room] with a dangerously high blood alcohol level and the mother, Jasmine Knotts, had no reasonable explanation for how he was exposed to that much alcohol, and so a hold was placed on all of the children.

[DHS COUNSEL]:     And was that – was that August of 2024? Does that sound right?

[TRUSLOW]:     Yes.

Knotts asserted this testimony showed the children had not been removed from the home for longer than twelve months. After closing arguments, the circuit court granted DHS's petition to terminate parental rights. On July 8, 2025, the written order was entered.

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2023).[2] Clear and

---

[2]The Juvenile Code was repealed by Act 528 of 2025 and recodified at Arkansas Code Annotated section 9-25-301. However, the legislative changes were not in effect at the time

4

convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its finding are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Only one ground is necessary to terminate parental rights. *Id.* The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

Knotts's sole point on appeal is that DHS failed to prove the statutory ground of failure to remedy. She does not dispute that the four minor children were adjudicated dependent-neglected or that there was sufficient evidence to prove she failed to remedy her illegal drug use or her inability to care for the minor children. Rather, she argues DHS failed

---

the order being appealed from was entered. Therefore, the previous version of the code, Arkansas Code Annotated section 9-27-341 is relied on here.

to prove the minor children were out of her home for twelve months. In support of her argument, Knotts points to the fact that the only evidence introduced at the termination hearing in support of this element was the testimony of a DHS witness, Truslow, stating the children had been removed in August 2024, which was less than the statutorily prescribed twelve-month period.

Under Arkansas law, to prevail on the failure-to-remedy ground, DHS must demonstrate (1) the child was adjudicated dependent-neglected; (2) the child remained out of the custody of the parent for twelve months; (3) the parent failed to remedy the cause of removal; and (4) this failure occurred despite meaningful efforts by DHS to rehabilitate the parent and correct the issue that caused the removal. Ark. Code Ann. § 9-27-341(b)(3)(B)(i).

While we agree the testimony presented by Truslow at the termination hearing was inconsistent with the minor children having been out of Knotts's home for twelve months, under a de novo review, the entire record is open for this court's review. *See Myers v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 46, 660 S.W.3d 357. In reviewing the record, it is clear the minor children were removed in March 2024, over twelve months before the termination of Knotts's parental rights. In fact, the circuit court found in a previous order that the children had been removed from Knotts's care on March 22, 2024. DHS does not have an affirmative duty to reprove factual findings made by the circuit court in earlier orders. *Del Grosso v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 305, 521 S.W.3d 519.

Accordingly, we affirm the order terminating Knotts's parental rights.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain* and *Linda J. Hamilton*, attorneys ad litem for minor children.